## GAGE, Apt., *vs.* GAGE.

An instrument in the form of a deed, purporting, for a consideration, to convey all the stock of cattle, horses, &c., and all personal estate which the grantor should have at his decease, may operate as a will of personal estate, if that will effectuate the intention of the party making it. But it cannot be allowed as a will, if it appear that the parties afterwards made a different arrangement in relation to the property of the grantor, intended to supersede and annul it, and which the grantor supposed rendered it void; and that approving it as a will would defeat his intentions, instead of carrying them into effect.

Gage v. Gage.

Such an instrument was executed; and at the same time, and as part of the same transaction, deeds of the real estate of the grantor were executed, to the same grantees, they assuming certain liabilites in consideration thereof; and the papers were deposited with a third person. After this, the parties entered into a different arrangement, relating to both the real and personal property of the grantor, and which was intended to supersede the whole of the first arrangement, and be substituted for it; in pursuance of which the deeds of the real estate were cancelled, one of the grantees receiving the avails of a portion of it which was sold, and a portion of the grantor's personal estate also, in full for his share of the estate, and being exonerated from the liabilities he had assumed; and a deed of the remaining real estate was made to the other—*Held*, that this transaction operated to annul and revoke the instrument in relation to the personal estate, so that it could not be allowed to operate as a will in favor of the one who had thus received his share, notwithstanding the instrument remained uncancelled.—*Held*, farther, that the declarations of the grantor, made at the time of the latter transaction, tending to show his understanding and intention that the new arrangement was to be substituted for the former, were admissible in evidence.—*Held*, also, that the instrument, not being executed as a will, or regarded by the grantor as such, his subsequent declarations, tending to show his intentions at the time of the last arrangement, and that this instrument ought to be destroyed because of that arrangement, were also admissible in evidence, to prove a revocation of it, and prevent its being allowed as a will.

APPEAL from a decree of the judge of probate, rejecting a certain instrument propounded by the appellant, Asa Gage, as a will of personal estate, executed by Asa Gage, senior, the father of the parties.

Upon the entry of the appeal it appeared that the instrument was in the ordinary form of a deed, by which the deceased, in consideration of one hundred dollars, paid by his sons, Asa Gage, jr., and Francis Gage, bargained, sold, released, granted and confirmed to them, all his stock of cattle, horses, sheep and hogs, husbandry tools, farming utensils, wearing apparel, and all his personal estate which is not included in household furniture and women's wearing apparel, which he might have at his decease, at which the grantees were to come into possession, and to hold the same to their own proper use. And the grantor, by the instrument, covenanted for himself, his executors, &c., that he would warrant and defend the same. This instrument, under seal, bore date January 25th, 1803, was executed in the presence of two witnesses, and was acknowledged before a justice of the peace.

Gage *v.* Gage.

Francis Gage, the appellee, alleged that it had been annulled and revoked by the deceased; and an issue was framed, upon the question of revocation, which was sent to the common pleas for trial.

Upon the trial it appeared, that on the 25th of January, 1803, Asa Gage, the deceased, undertook to make a disposition of all his estate, with the assent of his two sons; and executed this instrument, and also, at the same time, deeds to them of his real estate. The sons, as part of the same arrangement, gave their promissory notes to his three daughters, for $150 each, towards their portions, to be paid on their marriage, or at their father's decease; and the daughters were to have the furniture and wearing apparel, to be equally divided between them. The writings were all deposited in the hands of a brother of the deceased, where they remained until 1808, and the sons in the mean time occupied the land.

There was evidence that in 1808, at the request of the appellant, a new arrangement was made. The deeds of the real estate, made in 1803, were taken up and cancelled, and a certain portion of the real estate was sold, and the avails received by the appellant, with a portion of the personal estate; and he agreed that he would quit all, and that what he thus received should be his portion of the estate. A deed was made to the appellee, of the residue of the real estate, who undertook to pay the father's debts, maintain his parents during life, and pay the notes which had been made to the sisters in 1803.

The deed to the appellee was placed in the hands of the testator's brother, and the instrument now offered for probate remained in his hands until the decease of said Asa, in 1834.

It was further in evidence, that at the time of the sale of the real estate, in 1808, the deceased said that it was to be for the appellant's portion of his estate, and that he at several times subsequently declared that he had settled his estate, had given the appellant a certain amount, which he named, and the appellee the rest, except the furniture and wearing

apparel ; and that he had also at several times said that the appellant had received all he ever was to have—that the paper now offered for probate ought to be taken up and destroyed, as he had settled his estate in another way, and that it ought to have been destroyed when the others were ; and it appeared that he applied to his brother to deliver it up to him. The reason it was not given up did not distinctly appear, but he was told it was of no consequence.

The appellant objected to the foregoing testimony, that no evidence of revocation by words was admissible ; and that it did not show any revocation in writing, nor any such change of the circumstances of the testator as to amount in point of law to a revocation.

The court instructed the jury that the testator had power to annul the instrument, and render it void ; but being in writing, the law would not allow of a revocation by mere words—that it was not disputed that this instrument was originally part of an arrangement by which Asa Gage, deceased, made a disposition of all his estate, real and personal, upon which notes were given by the grantees, and the papers deposited with the brother of the said Asa—that if this disposition was altered in 1808, at the suggestion of the appellant, and part of the real estate was sold for his benefit, and he, at the same time, received part of the personal estate, was relieved from paying the sisters, from any debts of the father, and from maintaining his parents; and if the deeds of the real estate were taken up and changed, the appellee assuming those burdens ; and this was done with the intention of making a new disposition of the whole property, to affect the personal as well as the real estate, this paper being left in existence by mere negligence ; such new arrangement would operate as a revocation. But if the new disposition was intended merely to relate to other parts of the estate, and it was intended that this should remain, that would not be a revocation ; and if so, any declarations subsequently could not revoke it.

The court further instructed the jury that the declarations of the deceased, in 1808, and subsequently, were not of themselves to be regarded as amounting to a revocation, but they might be weighed so far as they bore upon what was done in 1808, and indicated what the understanding of the deceased was at that time ; and that the burden was on the appellee, and he should make out his case by satisfactory proof. To these instructions the appellant excepted.

The jury returned a verdict that the will was revoked by the testator, which was certified to this court with the foregoing case.

*C. H. Atherton*, for the appellant. The evidence received was in violation of the statute of frauds—that part in particular which has been incorporated into the probate law. It is admitting evidence of words to revoke a written will.

We are not aware of any change of circumstances that will operate as a revocation of a will, except marriage or the birth of a child. The additional clause in the statute of 1822 introduces no new ground of revocation. There are several methods of revocation : 1. Cancellation, obliteration, burning, or otherwise destroying. 2. A subsequent testamentary disposition. 3. By will, or other writing, expressly revoking. 4. The republication of a former will. 5. A presumptive or implied revocation. 1 *Williams on Executors* 67.

There are no cases to which a presumptive revocation applies, except marriage or the birth of a child. Marriage may, or may not. Marriage and birth of child may, but sometimes do not.

No disposition of property by any new act revokes the will, any farther than that disposition contravenes the will. 8 *Cowen's R.* 56, *Brant* vs. *Willson*. Papers of different dates may constitute the will. 1 *Wms. Executors* 80.

If Gage made a disposition of his real and personal estate, and then made a new disposition of the real, that of the personal remains.

*Gage v. Gage.*

We doubt whether a gift, or other disposition, of all the personal estate he had at the time of making the will, would be a revocation. The will would operate on any personal estate subsequently acquired.

Here is no pretence of any written conveyance. In the strongest view, it is only a declaration of intention, or of what he had done.

If the jury find the testator made a second will, but do not find the first cancelled, or in what respect they differed, the first is not revoked. 1 *Wms. Exrs.* 81; *Cowp.* 87, *Harwood* vs. *Goodright.*

Parol evidence is admissible in connection with acts of burning, tearing, &c., to show the intent. There are few other cases in which it can be received. 1 *Addams' Eccl. R.* 448, *Smith* vs. *Cunningham;* 1 *Wms. Exrs.* 82; 2 *Phil. Eccl. R.* 416, *Methuen* vs. *Methuen.*

There may be the clearest intention to revoke, accompanied by an act, and yet no revocation, as an attempt to revoke by writing, signed by two witnesses. 1 *Pick.* 543, *Laughton* vs. *Atkins;* 1 *Wms. Exrs.* 90; 2 *East* 488, *Thomas* vs. *Evans.* An express revocation, if only subservient to another disposition, fails if the intended disposition is imperfect. 1 *Wms. Exrs.* 90, *note;* 7 *Vesey* 379, *Ex parte Earl of Ilchester.* There is a strong case, 5 *D. & E.* 49, *Doe* vs. *Lancashire.*

*Farley,* for the appellee. The declarations of the testator were not admitted merely for the purpose of showing a revocation of the will, but to show the character and intention of certain acts of his. 3 *Starkie* 1715; 1 *Stark.* 48.

A will may be revoked by implication, or inference of law. 4 *Kent's Com.* 520.

These revocations are founded upon the reasonable presumption of an alteration of the testator's mind, arising from circumstances since the making of the will, producing a change in his previous obligations and duties.

Gage *v.* Gage.

In this case it was proved that by the arrangement of 1803, all the testator's property, real and personal, was disposed of, by which certain burdens were imposed upon the appellant. By the arrangement of 1808, made at the appellant's request, he was relieved from those burdens, and actually received a part of the property intended for him by the will, and he declared he had received all that he ever expected from his father's estate. Here was a different disposition of the property, which would operate as a revocation. 4 *Kent's Com.* 528 ; 3 *Stark.* 1715.

PARKER, C. J. The instrument offered for probate in this case, is in the form of a deed, executed and acknowledged as such. But although it is in form a present grant, it purports to convey nothing into the possession of the grantee immediately, nor necessarily to convey any thing in existence at the time it was executed ; and the appellant, who claims the benefit of it, concedes that it cannot avail him as a deed. Purporting to be a conveyance of all the personal property of which the grantor should die seized, with certain exceptions, the appellant asks that it may operate, and be allowed as a will of personalty ; and this may be done, if that will effectuate the intention of the grantor.

When this deed was executed, the grantor evidently intended it as a disposition of such personal estate as he should have at his death ; and although he adopted an instrument purporting to grant a present interest in that estate, and one which was nugatory in that form, conveying no such present interest, the law will overlook the form, and carry into effect the substance, in another mode, if the contemplated disposition ought to take effect at the death of the grantor. But if transmuting this deed into a will, or allowing it to operate as such, instead of carrying into effect the intention of the grantor, will defeat that intention, then to allow it as such would be a perversion of the principle.

The enquiry is, therefore, whether this instrument ought

to operate as a will—whether it should be allowed as a valid disposition of his personal estate, operative on his decease?

Regarded as a deed, it was not delivered to the grantees; but if it might have operated in that way, the delivery to a third person, for the use of the grantees, under the circumstances of the case, put it perhaps beyond the revocation of the grantor, unless by the consent of the grantees. But regarded as a will, it must be taken with the incidents of one; and notwithstanding the grantees gave certain notes to the daughters of the grantor, in consideration of the execution of this instrument and the deeds of the real estate, the power of revocation, even without the assent of the grantees, must, it would seem, attach to it. It is perhaps not very important how this may be, as the evidence, if it was rightly admitted, tends to show a full assent.

In ascertaining whether this instrument ought to operate as a will, we may look, not only to the instrument itself, but may inquire into the circumstances under which it was made, and any subsequent transactions tending to show a revocation of it. The issue framed by the parties is, whether there was a revocation, and the evidence offered tends to show that there was, subsequently to its execution, a new arrangement in relation to the property of Asa Gage, the grantor, by the agreement of all the parties to it, by which a different disposition was made of his real estate, with the intention and purpose of annulling this instrument, with the others, although it was not actually cancelled.

The seventh section of the statute of July 2, 1822, relating to wills, after a provision respecting the revocation of wills of real, or real and personal estate, enacts that "no will in writing concerning personal estate shall be revoked or altered by any words, or will by word of mouth only, except the same be in the life time of the testator committed to writing, and be read to him, and be proved so to be done, by three witnesses at least: *Provided*, that nothing in this section contained shall be construed to control or affect any revoca-

tion of a will to be implied according to law from any change in the circumstances of the testator, his family, devisees, legatees, or estate, occurring between the time of making the will and the death of the testator." 1 *N. H. Laws* 357.

If this instrument was in form a will, and thus carried on its face evidence that the deceased intended to make a will, and it was to be considered separate and distinct from any other conveyances, it might be said, perhaps, that there was no implied revocation here, from any change in the circumstances of the legatees, or of the estate, there being no subsequent disposition of the personal estate of which Asa Gage died possessed, inconsistent with it.

But the court cannot be required to construe this deed in form, into a will in fact, without inquiring into the circumstances under which it was executed and existed up to the death of the grantor ; and the evidence shows that it was originally part only of an arrangement, made by the agreement of the parties, embracing the entire estate of Asa Gage. This is not controverted. It was not delivered to the grantees, however ; and if it had been, it would have been void as a deed.

The subsequent arrangement by the agreement of the parties is inconsistent with the first in several particulars, revoking the first, it is admitted, so far as the real estate was concerned ; and the appellant, by that arrangement, received a certain share of his father's estate. This seems to be undisputed.

The evidence tends to show farther, that what was then done was intended as a substitute for the entire original disposition—that the appellant received the avails of real estate sold, and a part of the personal estate then existing, and agreed that what he received should be in full of his share. If such were the fact, the court are not authorized to separate this last transaction into parts, leaving part of the former operative against the design of the parties, and defeating the intentions of the deceased by construing his void deed into a will, when

he designed to revoke and annul it, and supposed he had done so. The first transaction should be taken together, as a whole, and the last also, as all the parties treated them. Viewed in that light, there was a revocation of any operation that this instrument might have as a will, along with the others, by a disposition of the real estate, and of the personal, also, inconsistent with the first disposition, and designed to annul and defeat this, as well as the other deeds. "Sir *John Huband*, by will in writing dated the 12th of February, 1708, devised several pecuniary and specific legacies, and then gave all the rest of his real and personal estate, after all his debts and legacies paid, to *John Pollen*, on condition he took the name of Huband upon him, and the heirs male of his body, with divers remainders over; afterwards, by lease and release, the 30th of August, 1709, Sir *John Huband*, together with *J. S.*, his trustee, conveyed several manors and lands in the county of *Warwick* to trustees and their heirs, to the use of himself for life without impeachment of waste, and that the trustees and their heirs should execute such conveyance and conveyances thereof as the said Sir *John*, by writing, under his hand and seal, or by his last will and testament, should direct or appoint; and in 1710, Sir John died, without altering or revoking the said will, or making any other appointment touching the said real estate; and the question was, whether this lease and release were a revocation of the will, or not: The original bill of *Pollen* being to establish the will, and the cross-bill to set aside the will, and have an account of the profits; and it was decreed, that the lease and release were a revocation of the will. *Mich.* 1712, *Pollen* and *Huband;*" 1 *Eq. Cas. Abr.* 412; 3 *Atk.* 73, *Beard* vs. *Beard;* 2 *Dyer* 143, *b, Putbury* vs. *Trevillian;* 12 *Mass. R.* 534, *Osgood* vs. *Breed;* 15 *Pick.* 403, *Brown* vs. *Thorndike.* "A codicil is, *prima facie,* dependant on the will; and the cancellation of the will is an implied revocation of the codicil. But there have been cases where the codicil has appeared so independent of, and unconnected with, the will,

that, under circumstances, the codicil has been established, though the will has been held invalid.   It is a question altogether of *intention.*"   2 *Addams' Eccl. Rep.* 229, *Medlycott* vs. *Assheton.*

As this does not purport to be a will, and is only to be admitted as such to effectuate the intention of the grantor, his declarations accompanying the last transaction were admissible, as part of the *res gestæ*, and to show the intention of the deceased to substitute the new arrangement for the first, not only in relation to the land, but as to his personal estate also.   They would have been so, had the instrument taken the form of a will, if the whole of the first transaction is taken together, as forming one entire disposition of his estate, according to the truth of the fact; and the latter also as an entire transaction, involving a question whether there was a revocation of the whole, or only of a part, of the first.   3 *Stark. Ev.* 1715; 1 *Gall. R.* 170, *Smith* vs. *Fenner.*

Whether his subsequent declarations were rightly admitted, if this had been a will in form, and intended as such, might admit of more doubt.   The declarations of a testator, that he had executed a written revocation of his will, might perhaps be competent, along with other evidence showing the loss of the paper, to show an express revocation.   And if so, perhaps the declarations in this case might be competent, in connection with the other evidence, to show an implied revocation, by a new disposition inconsistent with the first, even if the instrument had been regarded by the testator as a will, and been in the ordinary form of one.

However that may be, we are of opinion that in the inquiry whether this instrument had been so revoked or annulled that it ought not to have life and efficacy as a will, the evidence was well received, to the extent to which the court admitted it; that is, to show the understanding and intention of the grantor in what had been already done, those declarations being of the same character as those which previously accompanied the acts.

As this instrument is not, strictly speaking, a will, perhaps these subsequent declarations might be held sufficient of themselves to show that it should not so operate, the case not being within the statute relating to the revocation of wills; (3 *Stark. Ev.* 1715, *note* 2; 1 *Addams* 448,) but it is not necessary to settle that question.

*Decree affirmed.*