## Gillett and others vs. Robbins.

A statement in a bill of revivor that the complainants therein are the heirs at
    law of the complainant in the original bill, who has died intestate, is a suffi-
    cient allegation of heirship, without a more minute statement of the facts
    which show them to be such heirs.

Amendments to pleadings rest upon the sound discretion of the court before
    which the case is tried, and will not be reviewed on error or appeal, except
    in cases where the discretion has been manifestly abused.

Where averments, however defective, are sufficient to inform the opposite party
    fully of the facts intended to be proved, an amendment to such averments

allowed at the trial for the purpose of remedying their defects, will not consti-
tute such a surprise upon the opposite party as will entitle him to a continu-
ance of the cause, even though he may have relied upon such defects to ob-
tain a judgment.

A statement upon oath of the defendant, in his answer to a bill in equity, may be
overcome by the testimony of two or more witnesses, to admissions of the
defendant inconsistent with such statement.

APPEAL from the Circuit Court for *Green* County.

*Benoni R. Gillett* filed his bill in equity in March, 1848, in
the district court of Wisconsin Territory for the county of
La Fayette, to compel the defendant, *Robbins*, to convey to
him the N. E. qr. of the N. W. qr. of sec. 32, town 1 N.,
R. 1 E., in that county, which the bill alleges the defendant
purchased at the public land sale in 1847, at the U. S. Land
Office at Mineral Point, at $1,25 an acre, and paid for with
money furnished him for that purpose by the plaintiff, under
an agreement that the defendant would purchase at said sale
in his own name the east half of said qr. section, and convey
the N. E. qr. of said qr. to the plaintiff in a reasonable time
thereafter, or upon request. The bill alleges a request for a
conveyance, and the defendant's refusal to convey.

In September, 1851, a bill of revivor was filed by Almon
Gillett, Philo Gillett, Lester F. Gillett, Henry M. Gillett,
Leonard F. Gillett, Elijah R. Gillett, Orlin H Gillett, Wil-
liam W. Gillett, Charles Gillett, Apollos Griffin, Parmelia
Griffin, Norton Case and Jennet Case, alleging that said *Be-
noni R. Gillett* died intestate in April, 1848, and that they
were his heirs at law. In November, 1851, the defendant
filed his answer under oath, in which he admitted the de-
cease of *Benoni R. Gillett*, but denied any knowledge or in-
formation as to whether he died intestate, or as to whether
the complainants in said bill of revivor were his heirs at law,
and as to the matters stated in the original bill, denied that
he purchased the land in controversy in trust for said *Benoni
R. Gillett*, or ever held the same, or any part thereof, in trust
for him, but avers that he purchased the same at said land
sale in his own name, and paid for the same with his own
money. He denied that he ever made any contract relative
to the purchase of said land with said *Benoni R. Gillett* alone,
but averred that, previous to the sale, he entered into a parol

June Term, 1860.

GILLETT et al.
v.
ROBBINS.

contract with said *Gillett* and one Edwards, that they, or one of them, should furnish him before said land sale, with the money necessary to purchase said piece of land, and that with such money he would purchase said land in his own name, and afterwards convey such parts thereof to the said *Gillett* and Edwards respectively, as should, within ten days after the close of said land sale, be awarded to each of them by the arbitrament of certain persons named, who were then denominated a town board of arbitrators, &c. He denied that either said *Gillett* or Edwards furnished him any money for the purchase of said land prior to said land sale, but admitted that after he had purchased said land and paid for it with his own money and received the duplicate therefor, and upon the evening after he had received said duplicate, said *Gillett* handed to him the sum of $50, which he received, that being the price which he had paid for the land in controversy. The answer further states that, although under no legal obligation to do so, yet he would have conveyed said land to said *Gillett* and Edwards, but for the fact that their respective claims were never settled by said arbitrators or otherwise, and that said *Gillett* directed him not to make a deed to said Edwards for any part of said land, and Edwards directed him not to make a deed to said *Gillett* for any part thereof, and he was threatened with litigation, by each, if he made a deed of any part to the other. He admits that said *Gillett* demanded of him a deed for the whole of said land, which he refused to make, and avers that he offered to refund to said *Gillett* the said sum of $50, which *Gillett* refused to accept, and that he is still ready and willing to refund it to the person entitled to it. The answer also insisted upon the statute of frauds as a bar to the relief prayed for.

In October, 1855, a supplemental bill was filed by *Philo*, *William W.* and *Leonard F. Gillett*, in which they state that all the other complainants in the bill of revivor had conveyed to them their interest in the land in controversy. The defendant filed an answer to the supplemental bill, denying any knowledge or information as to the matters therein stated. There was a replication to the answer of the defendant to the original bill and the bill of revivor. The venue

was changed to Green county, and on the trial, deeds executed to *Philo, William W.* and *Leonard F. Gillett,* by their co-complainants in the bill of revivor, purporting to convey their interest in the land in controversy, were offered in evidence, and objected to by the defendant, for the reason that by said bill the grantors appeared as parties to the record, and that conveyances afterwards made to their co-plaintiffs were not evidence in the cause, even if any title was conveyed thereby. The objection was overruled, the defendant excepting, and the deeds read in evidence. The complainants also offered in evidence a deed executed by said Edwards in February, 1856, conveying his interest in the land in controversy to *Philo Gillett,* which was objected to by the defendant as irrelevant, and because it was executed after the filing of the bills in the cause. The objection was overruled, the defendant excepting, and the deed read in evidence. The complainants then offered to read certain testimony of Orlin H. and Henry M. Gillett, and Charles Harris, taken in the case in open court, at the March term, 1857, and reduced to writing by the judge of the court, to which the defendant objected, for the reasons that said Orlin H. and Henry M. were incompetent to testify on the ground of interest, being parties to the record as plaintiffs, and that their conveyance to their co-plaintiffs after the filing of the bill of revivor, did not render their testimony admissible, and because the plaintiffs had taken the deposition of said Harris in the case, which was then on file in the court, and because the testimony contained in the deposition was different from that proposed to be read in evidence. The objections were overruled, the defendant excepting, and the proposed evidence was read.

Orlin H. and Henry M. Gillett, testified that *Benoni R. Gillett* was never married; that he had no father or mother living at the time of his death; that the *Gilletts* named as plaintiffs in the bill of revivor were his brothers, and Parmelia Griffin and Jennet Case, his sisters; and were his sole heirs at law. Orlin H. testified further as follows: " *Benoni R. Gillett* was in possession of [the land in controversy] before and at the time it came into market; that is, he had a mineral lot on it, and collected rents from it before and after

the sale, and I know of no one who pretended to have any claim to it until the time of the sale, when John Edwards set up a claim to the half of ten acres of it." "I was present at the land sale at Mineral Point, when this land came into market in the spring of 1847. My brother *Benoni* was also there at the sale. I understood from *Benoni*, and from the defendant, that each was to furnish the money to enter a forty, and defendant was to enter the whole eighty in his own name, and then deed over the forty in question to *Benoni*. This agreement was talked over and assented to by both, before and after the sale." "The entry of the land in question was made in the defendant's name. The morning after the sale I met defendant in the streets of Mineral Point, before the sale commenced for that day, and he asked me where *Benoni* was. He said that he had not yet paid him the money to get the duplicate of the land, and asked me to look·him up. I went to find him. I did not find him, and on my return met defendant again, and he told me that he had seen *Benoni*, and got the money from him, and had got the duplicate. · My brother *Benoni* continued to collect the mineral rent from this land up to the time of his death, and I, as his administrator, collected some after his death. The reason why the land was bid off by defendant, was, that if sold in eighty acre lots, it sold at $1,25 per acre; but if sold in forty acre tracts, it sold at $2,50 per acre, as the minimum price. My brother informed me at the sale, that Edwards set up a claim to a part of the forty, but he did not say that there was any agreement by which Edwards was to have any portion of it."

Henry M. Gillett testified as follows: "After the land sale at Mineral Point was over, defendant, on his way home, came to my house, and I had a conversation with him about the sale. He said my brother *Benoni* furnished the money to enter one-half of the eighty, and he entered the whole in his own name, and was to give my brother a deed for the north forty, at any time he called on him for it."

Charles Harris testified as follows: "*B. R. Gillett* occupied the north forty of the east half of the quarter section [in controversy] at the time of the land sale. The day the defend-

June Term, 1860.

GILLETT et al. v. ROBBINS.

ant returned from the land sale, or the day after, I asked him if *Gillett* entered the north forty. He said no; he entered the whole eighty in his own name, but that *Gillett* furnished the money to pay for the north forty, and he was to deed it to him. He said the reason for making this arrangement was, that if the whole eighty was entered together, the minimum price was $1,25, but if entered in forty acre lots, it would have been $2,50 per acre. He said he had some trouble in hunting up *Gillett*, to get the money of him to pay for the land, but that he finally found him, and mentioned his having the money in an old handkerchief, and said he had not money enough of his own to pay for the land; that he had only money enough to pay for his own forty and his expenses."

The only evidence offered on the part of the defendant, was the deposition of said Edwards, who testified substantially as follows: "I claimed, up to the time of the land sale at Mineral Point, twenty acres of the forty in question, but at the sale I relinquished to *B. R. Gillett* my claim to ten of said twenty acres, and then claimed the N.W. qr. of said forty. I and *B. R. Gillett* appointed the defendant to enter said land for us at the land sale at Mineral Point, in 1847, conditioned that he should deed to me and *B. R. Gillett* our respective shares of the land, as claimed by us previous to the sale. After the sale I tendered to *B. R. Gillett* my portion of the money for the land, and he said, 'You need not pay; I owe you money, and you will give me credit for the amount in account.' The defendant never refused to deed the land to me, but has withheld the deed, saying that *B. R. Gillett* told him not to deed to me. Not quite two years ago I gave to *Philo Gillett* a deed for my part of said land, for $50."

Upon the argument of the case, the counsel for the defendant insisted that the plaintiffs were not entitled to a decree, for the reason that they claimed as heirs at law of *Benoni R. Gillett*, who filed the original bill in this cause, and that the facts showing that they were such heirs, were not set forth in the bill of revivor or any subsequent pleading of the plaintiffs. After the cause was submitted to the

court on the part of the defendant, for final decision, the complainants asked leave to amend their pleadings by setting forth therein "the facts necessary to show that they were the heirs at law of said *Benoni R. Gillett.*" The defendant's counsel objected to such amendment, for the reason that it would be unjust to the defendant to make a case by amendment after the cause was entirely submitted on his part, and that he was not prepared to make defense to such amendment. The court overruled the objection, and allowed the amendment, the defendant excepting. The defendant's counsel then asked a continuance of the cause until the next term of the court, and in support of the motion and of his objection to the amendment, made and filed an affidavit, the substance of which was, that the defendant himself was not, to the knowledge of counsel, in the county of Rock; that the counsel supposed him to be more than eighty miles distant from the place where the hearing was then going on; that the case made by the amendment with the other statements in the bill, was such, that he, the counsel, was not prepared to try or dispose of the cause at that time; that the amendment supplied a material defect in the complainants' pleadings, upon which we had relied with confidence to obtain a decree in favor of the defendant, up to the time when he finally submitted said cause to the decision of the court.

The court refused to continue said cause, or impose any terms upon the complainants in allowing said amendment to be made, to which ruling of the court the defendant excepted. The court found as facts that *Benoni R. Gillett,* at the land sale at Mineral Point, in the spring of 1847, furnished to the defendant $50, with which the defendant agreed to enter the land in controversy, and after such entry to convey it to said *Gillett* on request; that with said money the defendant purchased said land in his own name; that after such entry said *Gillett* demanded of the defendant a conveyance of said land, which he refused to execute; that said *Gillett* died intestate in April, 1848; and that the complainants in the supplemental bill, as heirs of said *Benoni R. Gillett,* deceased, and by purchase from their co-heirs, are now the equitable owners of said forty acres of land, in certain

June Term,
1860.

GILLETT et al.
v.
ROBBINS.

proportions designated in said finding. The court therefore ordered judgment against the defendant that he convey to the said complainants their respective interests in said land, and that the complainants recover costs, &c.; to which finding and decision the defendant duly excepted, and judgment being entered in accordance with such finding, the defendant appealed.

*James H. Knowlton,* for appellant :

1. The court erred in allowing the plaintiffs to amend their bill, so as to state a case for the heirs, after the cause was submitted by the counsel for the defendant. 2. The case made by the bill is an express trust, created by parol. The defendant in his answer expressly denies the trust and insists on the statute of frauds. A parol express trust cannot be enforced when the defendant insists upon that statute. Nor can a parol contract for the conveyance of lands be enforced, when there has been no part performance. Payment of all the purchase money is not part performance which will take the case out of the statute. Going into possession of the land under and in pursuance of the contract is part performance, and takes the case out of the statute. Nothing of this kind was done in this case. *Dyer vs. Dyer,* 1 Eq. Lead. Cases, 144, 145, note ; *Bartlett vs. Pickersgill,* 1 Eden, 515, *et seq.; Bellasis vs. Compton,* 2 Vt., 294 ; *Botsford vs. Burr,* 2 Johns. Ch. Rep., 411 to 414; 10 Ves., 517 ; *Jackman vs. Ringland,* 4 Watts & Serg., 149. 3. A resulting trust may be established against the answer of the grantee, by parol evidence when it is full, clear and satisfactory. 1 Eq. Lead. Cases, 201, 202, and cases there cited. But the testimony of two witnesses, that they heard the defendant say that *Benoni R. Gillett* let him have the money to buy the land, is not full, clear and satisfactory, and sufficient to overcome his positive denial made by his answer on oath, which fully explains the facts and is corroborated by the testimony of Edwards. Much more satisfactory evidence has been ruled to be insufficient, where witnesses swore to facts and not mere admissions. See 2 Johns. Ch. R., and 10 Vesey, *ubi supra.* 4. The claims of *Gillett* and Edwards were to be determined by arbitrators. They claimed distinct parts of the land in

controversy, and their claims not having been determined up to the time when this suit was commenced, *Robbins* could not in good faith, and with safety to himself, have conveyed to either of them. The conveyance by Edwards to *Philo Gillett* since the suit was commenced, cannot be allowed to affect the defendant in this action. 5. If the court were right in giving judgment that the defendant should convey the land, it was error to mulct him in costs.

*J. A. Sleeper*, for respondents:

The amendment allowed at the trial had the effect to introduce into the pleadings a statement of the evidence which would prove that the complainants were the sole heirs at law of *Benoni R. Gillett*. That they were such heirs was a fact to be proved; the pleadings of the complainants contained allegations of the fact; the answer of the defendant required that proof to establish that fact should be made. There was therefore no defect in the pleadings on which the counsel had any right to rely; nor could the amendment by any possibility injure the defendant, or affect his rights. The whole matter was within the discretion of the court. 2. *Benoni R. Gillett* being in possession of the land as a claimant, and having furnished the money for its purchase according to the agreement alleged in the bill, the purchase of the land with that money raised a resulting trust in favor of *Gillett*. The mere act of providing the money with which the land was bought, without any agreement, would raise such a trust. Lead. Cases in Equity, *Dyer vs. Dyer*, p. 139, and notes; Statutes of 1839, p. 162, § 6. 3. The denial in the answer that the defendant purchased the land for *Benoni R. Gillett*, is clearly overcome by the testimony of two witnesses, or what is equivalent thereto. 4. The answer admits enough of the plaintiffs' case to entitle them to their decree. It admits that *Gillett* immediately after the sale, reimbursed to *Robbins* the $50 said to have been advanced by him for the land, and this, under the arrangement existing between the parties, was equivalent to a payment of that sum to *Robbins* in advance of the sale.

*By the Court*, DIXON, C. J. The pleadings in this case were

made up anterior to the adoption of the Code and according to the system which formerly prevailed in the courts of chancery. The counsel for the appellant referred us to no adjudications in which it has been held that it was bad or insufficient pleading, in a bill or answer in equity, to allege that certain named parties were heirs at law of a deceased person, and that as such upon his death they succeeded to certain of his rights. Upon examination we can find no authorities sustaining such a position. On the other hand, we find in several books or collections of precedents, of well established authority and reputation, each of which may be regarded as having received the sanction and approval of competent tribunals, that, both at common law and in equity, this form of averment was frequently used. Curtis's Eq. Pl., 74, 87 ; 2 Bar. Ch'y. Pr., 559, 566 ; 2 Chitty's Pl., 468, 469. The two things taken together would seem to establish as matter of authority, that the allegation in the bill of revivor, before the same was amended, that *the complainants therein were the heirs at law of Benoni R. Gillett deceased, intestate, to whom the real estate, described in the original bill filed by him, descended by the laws of descent,* was sufficient, and that consequently no amendment was necessary.

On general principles we do not see why such statement ought not then to have been, and would not now be considered as a good averment of matter of fact which it was material for the complainants to allege and prove, in order to maintain the action. Although it may in strictness be said that, whether one person is, or is not, the heir at law of another who is dead, is a mixed question of law and of fact ; and that the averment that he is so, is in part a conclusion of law, to be deduced from several intermediate facts which must be established in evidence ; still it is so much in the nature of a fact, and its statement in this form so fully apprises the opposite party of the foundation of the claim, which is set up against him, that the law, which favors brevity and conciseness, and the avoidance of unnecessary allegations, in pleading, treats it as such. Many analogous instances of mixed matters of law and fact being, for the purpose of pleading, treated as facts, might be cited. Such, in

particular, are statements of title or ownership of property, both real and personal. The averment that a party is the owner of an article of personal property, in relation to which he claims some right or some redress in a court of law or equity, will, we think, when subjected to a rigid analysis, be found to be quite as much, if not more, a conclusion of law, than a statement of fact; yet our daily experience and constant practice prove, that such averments are, and ever have been considered good. The same is true of the title or seisin of real property, the proof of which often depends upon a long succession of conveyances, each of which must, on the trial, be established by competent testimony, but none of which has it ever been the custom to set out in the pleadings. It is difficult to perceive any reason which would require parties claiming to be the heirs of a deceased person, to state the several degrees of their relationship to the deceased, with all the accompanying circumstances, which would not equally require one asserting title to realty to set out the several links in the chain, by virtue of which he proposes to connect himself with the original source of the title. In either case, it is a technical nicety, which the law, looking more to the correct and easy administration of justice than to absolute logical harmony, does not demand. Both, when plainly and directly stated, though partaking somewhat of the nature of legal conclusions, are deemed sufficient to inform the opposite party of the foundation of the claim made against him, which is the principal object of all pleadings. Any other rule in such cases would lead to a needless particularity and burdensome prolixity of statement, often times very difficult to be attained. Hence, we are of opinion that no amendment of the bill in this case was required.

But if it be admitted that the bill was, in this respect, defective, and the amendment necessary, we do not, then, see how the defendant or his counsel can claim to have been taken by surprise by it. They must have known that the plaintiffs would come to the trial relying upon, and expecting to prove the fact, that they and the other complainants in the bill of revivor, under whom they claimed, were the heirs at

law of the deceased. This was a matter lying so plainly and palpably at the foundation of the action, that its consideration could not have been overlooked by either of the parties. The entire rights of the plaintiffs depended upon it; and unless it was proved, no judgment in their favor could be obtained. The defendant and his counsel must also have known that the plaintiffs intended to offer this proof under the averments contained in the supplemental bill and the bill of revivor. Those averments, however defective, were certainly sufficient to inform them of that intention. Proofs to that end were taken some months before the trial took place. Under these circumstances there is no room for the supposition that the testimony introduced came unexpectedly upon them, or that they were not fully aware that it would be offered and relied upon. Indeed, the counsel, in his affidavit of surprise, does not pretend that he was taken unawares by the evidence, but he says, that up to, and including the trial, and when the cause was submitted, he relied upon the supposed defects for the purpose of defeating the action, and obtaining a decree in favor of the defendant. It is nothing more nor less than saying, that the action of the court in allowing the amendment, was unexpected to him —that he did not anticipate it. This, in our opinion, is not the kind of surprise or misleading contemplated by the statute. We understand it to refer to the sudden and unexpected proof of *facts*, of which the opposite party cannot, by the pleadings, be reasonably said to have had notice; and which, for that reason, he could not, in the exercise of ordinary diligence, have been prepared to meet or rebut. The spirit, if not the letter, of our statutory provision concerning the amendment of pleadings, both as to defective statements of facts and variances between the allegations and proofs, binds the parties to the exercise of good faith in all their transactions in relation to them. If they are defective or irregular, or differ from the facts proved, the parties are bound to know that the court possesses the power of amendment, and that in furtherance of justice, this power will be exercised on the most generous and liberal terms, in all cases where there is enough of substance in the defective

pleading to have fairly apprised the opposite party of what he was required to meet. They are bound to take notice that in all cases, amendments will be granted on fair and reasonable conditions. They rest in the sound discretion of the court, and will not be reviewed on error or appeal, except in cases where the power has been clearly and manifestly abused. The judge at the circuit can best determine whether the adverse party has been surprised or misled, or whether any injury is likely to result to him from his relying on the defect or variance; and whether he ought, in good faith, to have relied upon it all. In this case we are satisfied, conceding the amendment to have been necessary, that it was no abuse of discretion, to allow the complainants to amend instanter, and on the argument, without costs, and without a continuance of the cause.

We have taken this occasion briefly to express our views on this subject, not because we are of opinion that any step taken in the cause is attributable to bad faith on the part of either of the counsel or parties to it, but because of its importance to the profession, growing out of the frequency of applications of this nature, and because it seemed to us not unsuited to the purpose. The question here involved arose at a very early day after the adoption of the Code of Procedure, and at a time when there had been no adjudications upon its provisions; and when either good or bad faith in relation to it could hardly be ascribed to any body.

Upon the merits of this action we feel very confident that the judgment of the circuit court was correct, and that it ought to be affirmed. The question upon which the determination of its merits mainly, and we might almost say entirely, turns, is whether the evidence discloses a parol express trust in reference to the land, or a resulting trust. If the former, although the purchase money was fully paid, yet there being no other act done, a conveyance would not be decreed. If the latter, according to the laws which prevailed in the territory of Wisconsin, at the time the transaction took place, a specific performance should be ordered, although according to the provisions of our present statutes, sections 6, 7, 8 and 9, of chapter 84, such trust

*June Term, 1860.*

Gillett et al.
v
Robbins.

might not be declared or performance ordered in behalf of the present plaintiffs, if the affair had transpired since their enactment. In determining whether it was a parol express trust, or is one resulting by implication of law, it is only necessary to ascertain whether the purchase money was furnished by the deceased to the defendant before he completed the purchase at the land sales, and was applied by him in payment for the land, as is charged in the bill; or whether he received it after he had, in fact, made the purchase with his own money, and in pursuance of the previous parol agreement, by which he was to buy and convey to the deceased, as is insisted in the answer. This will readily be recognized as purely a question of fact to be decided upon the evidence produced. That the defendant bought the land, not for himself, but upon a trust resulting or parol, is not disputed. Nor is it denied that he, at or about the time of the sale received from the deceased, the full amount of the consideration paid. These facts are admitted in his answer. But he insists that the parol contract into which he entered, was with the deceased and one John Edwards, to whom he was to convey the land, according to the terms and conditions of the contract, as set forth by him in his answer. He denies that the contract was made with the deceased alone. He also denies that he received the consideration money from the deceased before the purchase was consummated, but admits that he received it on the evening of the same day on which he obtained the duplicate, and paid for the land with his own money. The bill charges that the agreement was made solely with the deceased, and that the land was paid for with money previously furnished by him to the defendant for that purpose. These are the material points of the issue.

It cannot be denied, that in considering questions like the present, where one party admits facts which tend strongly to show that the other is morally and equitably entitled to the relief which he asks, but insists upon some statute, as in this instance upon that against frauds and perjuries, to tie up the hands of the court, and prevent its being granted, it is often very difficult to rid our minds of the impressions which such

admissions are calculated to create. We involuntarily cling to what appears to be the substantial equity of the transaction. But aside from any influence of this kind, against which we have endeavored to guard, and giving to the answer the credit to which it is entitled as evidence in the defendant's behalf, we are clearly of opinion that there is a decided preponderance of proof in favor of the allegations of the bill. The objections to the testimony which is relied upon to overcome the denials of the answer, go to its character rather than to the number or credibility of the witnesses sworn. It consists in admissions made by the defendant at or about the time of the sale, to the effect, that he had purchased the land for the deceased, and with funds provided by him; and in proofs that the defendant had acquiesced in the occupancy and receipt of the rents of the land, by the deceased and those claiming under him, since the time of the sale, the same being a valuable mineral lot.' It is insisted that such admissions ought not to be received for the purpose of disproving or rebutting the sworn statements of the answer—that in order to destroy its effect, the witnesses must testify to facts within their knowledge, and not to what they have heard the defendant say in relation to them—and that the positive testimony of three witnesses, to declarations directly contradicting the averments of the answer, and made at different times, and under different circumstances, are not equivalent to the evidence of two witnesses to the facts themselves, and are, therefore, not a compliance with the old chancery rule upon the subject. But two authorities (10 Vesey Jr., 517, and 2 John. Ch. R., 412) are cited to support these positions, neither of which, in our opinion, does so. Both recognize the admissibility of such declarations, but admonish us that they are evidence of an unsatisfactory character, on account of the ease with which they may be fabricated, and the impossibility of contradicting them; and warn us against their being too readily accepted and believed. But with these cautions, we know of no rule which forbids them in any case. We know of no principle of law touching an answer in chancery which renders its statements so sacred or so infallible, that

June Term, 1860.

GILLETT et al.
v.
ROBBINS.

they may not be attacked and overthrown according to the rules of evidence which govern other cases. The general principle which authorizes the reception of admissions, namely, that whatever a party, contrary to his own interests, voluntarily admits to be true, may reasonably be taken for the truth, seems to be as applicable to such a case as any other. We can see no reason for the exception. And if the admissions are clearly and satisfactorily proved, and are such as to convince the court of their truth, we are unable to see why they may not be acted upon. In this case, when taken in connection with the facts admitted in the answer, and the circumstances of possession and control of the land, they satisfactorily establish the allegations of the bill. The theory upon which it is sought to exclude them, would, if adopted, extend to their exclusion in all cases where, according to the former system, there was an answer under oath, without regard to their character or the manner in which they were made; and it would follow that written admissions, contrary to the averments of the answer, no matter how many times repeated, if not under oath, would be of no avail to the plaintiff. Such, it seems to us, could not have been the law.

The testimony of the witness Edwards, whom the defendant claims to have been one of the parties to the contract, does not shake the case made by the plaintiffs in the least. It is true that he testifies that he claimed a portion of the land in question prior to the land sales, and that he and *Gillett*, the deceased, appointed the defendant to enter it for them. But his testimony on this subject is so very meagre, and couched in such language, that the impression that he and *Gillett*, and the defendant, never talked together at all until long after the sales, is unavoidable. He swears to no bargain or agreement between them. He says that he and *Gillett* "did appoint *Robbins* to enter the land," &c.; from which the only legitimate inference is, that whatever understanding there might have been between him and *Gillett*, it was one to which the defendant was not a party, and which was arrived at when he was not present. His testimony further shows, that by his agreement or understanding he was to look to *Gillett* for whatever title or interest he claimed.

He speaks about having tendered to him his portion of the purchase money. He claims to have advanced no part of it, but admits that it was all paid by *Gillett.* This as to him would make the contract clearly within the statute. He had no rights which could have been enforced.

Judgment affirmed.