BONNER VS. THE HOME INSURANCE COMPANY.

SAME VS. THE ÆTNA INSURANCE. COMPANY.

SAME VS. THE PHŒNIX INSURANCE COMPANY.

Where a complaint in an action upon a fire policy, in setting forth the contract of insurance, omitted to state the *conditions* contained in the policy, but otherwise stated the contract correctly, and the policy, when offered on the trial, was objected to, as not being the contract described in the complaint: *Held*, that the circuit court properly allowed the plaintiff to amend upon the trial without costs, by making the policy, with the conditions annexed, a part of his complaint.

*Held*, also, that it did not appear that such variance actually misled the defendant to its prejudice, especially as it had already filed answers applicable to the real cause of action as shown by the amended complaint.

After the amendment was made, the defendant moved for *time* to file a new answer, upon an affidavit of its agent, that he was taken by surprise by the amendment, and in consequence thereof, was not then prepared with evidence to meet the new allegations of the complaint, and that such evidence could be produced at a future trial, &c. *Held*, that the motion was properly denied.

In an action upon an insurance policy, the preliminary proofs furnished by the assured to the insurance company, are admissible for the purpose of showing a compliance with a condition of the policy; and if the defendant desires to limit the effect of the evidence, he should not object generally to its admission, but should state distinctly the ground of his objection, and then, if proper instructions on the subject are not given to the jury, the error will be corrected on appeal.

Where, on the trial of a cause in this state, it became material to show what shipments had been made to one of the parties, by railroad, from a certain station in Ohio, mere proof of the uniform usage of railroad companies to keep a forwarding book at each station, in which is entered a statement of all freight received for shipment, from whom received, to whom consigned, and to what place sent, is not sufficient to authorize the admission in evidence of minutes or copies taken by a witness from the forwarding book kept by the railroad company at the station referred to.

Had the custom of that railroad company, and the general accuracy of that particular book, been first established, *it seems* that the secondary evidence of its contents should have been received, as the book was not within the control of the parties, was beyond the reach of the process of the court, and was such a book as the railroad company would not willingly part with. At all events, the party offering the secondary evidence would be bound to go no further than to show that the railroad company refused to part with the possession of the book.

It was stipulated in an insurance policy, that the insured should, if required, submit to an examination, under oath, by the agent of the company, and answer all questions, &c., and subscribe such examination when reduced to writing, and until such examination, being required, was had, the loss should not be payable. In an action upon the policy, it appeared that such an examination, being required, had been in part had, and reduced to writing, but *not* subscribed, and, without objection from the insured, was adjourned for two or three weeks, when it was to be completed; but that when applied to for that

13 677
108 495
13 677
52 LRA 427n
52 LRA 542n

January Term, 1861.

BONNER
v.
HOME INS. CO.

purpose by the agent, within the time limited, the insured refused to submit to a further examination, or to subscribe that already taken. *Held*, that such refusal, under the circumstances of the case, was unwarranted, and therefore, by the terms of the policy, the loss had not yet become payable.

APPEALS from the Circuit Court for *Dodge* County.

These actions were brought to recover for losses under fire policies issued to the plaintiff by the several insurance companies above named. The questions in each case were the same. The complaint in the suit against the *Home Insurance Company*, stated the contract of insurance as follows: " On the 29th day of July, 1859, the said defendant, in consideration of, &c., did promise and agree with and did cause the plaintiff to be insured in the sum of fifteen hundred dollars, by a certain policy of insurance, No. 112, duly signed, &c., whereby the defendant did insure the plaintiff against loss or damage by fire, to the amount of, &c., on his liquors, wines, &c., situate, &c., and thereby promised and agreed to make good unto the plaintiff, his executors, &c., all such loss or damage, not exceeding in amount the sum insured, as should happen by fire to the property as above specified, from the 29th day of July, 1859, at noon, until, &c.; the said loss to be estimated according to the true and actual value of said property at the time the same shall happen, and to be paid within sixty days after due notice and proof thereof made by the assured, in conformity to the conditions annexed to said policy." The complaint alleged loss by fire, of the property insured, in October, 1859, amounting in value to over $9,000, and that the plaintiff had given notice and made proof of the loss in the manner required by the policy. The answer, which was verified, was, in substance: 1. A denial that the company executed the policy of insurance described in the complaint, or any policy of that tenor and effect. 2. That the company did execute a certain policy of insurance to the plaintiff, but that it was obtained by certain fraudulent representations made by him as to the value of his stock in trade. 3. That the plaintiff did not forthwith, after the fire, give notice thereof to the defendant, and had not delivered to the defendant a particular account of his loss, signed by him, and verified by his own oath, as re-

quired by the last mentioned policy. 4 and 5. That the loss of the plaintiff did not exceed $3,000, and that he had been guilty of fraud and false swearing in presenting to the company his affidavit that the loss amounted to over $9,000, in consequence of which the policy, by its terms, had become void.

On the trial of one of the actions, the plaintiff offered in evidence a policy of insurance executed to him by the defendant, corresponding with the one described in the complaint, as to date, number, amount insured, the commencement and termination of the risk, the description of the property insured, its location, and the names of the contracting parties, but containing, also, the numerous conditions and qualifications which are usually contained in or annexed to fire policies. The defendant objected to the introduction of this policy as not being the contract of insurance described in the complaint, and the court sustained the objection. The plaintiff then asked leave to amend his complaint, by setting out at length the policy and the conditions referred to in it, and averring that he had complied with all its conditions on his part, &c. The defendant objected, but the court allowed the amendment to be made. The defendant's counsel then stated that they were surprised by the amendment, and were not prepared to proceed with the trial, and asked for an adjournment, but the court refused it. The defendant then asked leave to withdraw the answer, as inappropriate to the complaint as amended, and untrue, as denying the execution of the policy set out in the amended complaint, and asked for time and leave to file a new answer. The court refused the leave, but said that the defendant might amend the answer by striking out that part of it which denied the execution of the policy. An agent of the company then presented his affidavit, stating that he had charge of the defense of the suit; that he was taken by surprise by the amendment of the complaint, and that in consequence of this amendment, the defendant was not then prepared to proceed with the trial; that a new answer was necessary, in order to introduce its defense; that the defendant was not prepared with evidence to sustain its defense, and rebut the

new allegations in the complaint as amended, and meet the new issues raised thereby; that such evidence could be produced at a future trial; that the defendants had a good defense on the merits, &c. Upon this affidavit, the defendant renewed the motions previously made; but the court decided that the amendment of the complaint was immaterial; that it should be allowed without terms; and that the cause must proceed to trial without an adjournment; to all which rulings, exceptions were taken by the defendant.

The plaintiff offered in evidence the written proof of loss which he had furnished to the company, being his own affidavit as to the origin of the fire, the amount of his stock &c. The defendant objected to this evidence, but the objection was overruled. The plaintiff, as a witness in his own behalf, testified, among other things, that part of his stock, of the value of about $3,000, consisting of liquors, cigars, &c., had been shipped to him at Beaver Dam, from Zanesville, Ohio, on the Central Ohio Railroad, in the years 1857 and 1858. On the part of the defendant, a witness, Durand, testified as follows: "I am an agent for the *Ætna*, *Hartford*, and *Home Insurance Companies*, and after this fire, I examined into the facts for said companies; I examined the plaintiff orally, in November, 1859, and reduced the examination to writing; I did not finish it, but stated to the plaintiff that I would adjourn the examination for two or three weeks, and then examine further. On or about December 6th, 1859, I returned to Beaver Dam, and called upon the plaintiff to submit to a further oral examination; he refused to submit to any further examination, and also refused to sign the examination before taken, and stated that he should not submit to any more examinations. The plaintiff never submitted to any further examination after his refusal in December; at the time the examination was adjourned, in November, I told him I would postpone the examination until I saw other agents. On my return to examine him further, he refused, as stated above. I have been engaged in managing railroads, and know the manner in which freight is received and shipped at railroad depots, and the entries and records thereof kept by all railroads in

this country, in their books; one uniform rule prevails with all roads in this respect; at all railroad stations, the agent keeps a forwarding book, in which is entered a brief statement of all freight received for shipment, from whom received, and to whom consigned, and the place to which it is sent; these books remain at the station from year to year; since the last term of this court, I have been to the depot of the Central Ohio Railroad, at Zanesville, Ohio, to examine the books of the station office in regard to the shipments of freight made from that place by *Gustavus Bonner*, to himself, at Beaver Dam, Wisconsin; I examined said books for said entries, and took a minute of all shipments made by *Gustavus Bonner* from that station to himself at Beaver Dam, during the years 1857–8, and have the same now with me." The defendant asked the witness to state the same to the jury. The plaintiff objected, and the court sustained the objection. On cross-examination, the witness said : "I first came to Beaver Dam in reference to the fire, the last of November or the first of December. I saw *Mr. Bonner* the next day; I examined him by virtue of the power contained in the policy; he submitted to the examination without demurring, and treated me fairly; I examined him; I said I would examine him further after I had seen the agents of the other companies."

Among the instructions which the defendant asked the court to give the jury, was the following : "If the jury find that the plaintiff refused, when requested by the agent of the defendant, to submit to an examination under oath, and answer all questions touching his knowledge of anything relating to his loss or damage [under the policy], or to his claim thereupon, and subscribe such examination, the same being reduced to writing, then the loss has not become payable, and the plaintiff cannot recover in this action." The court gave this instruction, but also charged the jury, that the plaintiff was obliged to submit to only one examination, and that if an agent of the company undertook to make an examination, and the plaintiff answered all questions then put to him, and was ready at that time to subscribe the examination so made, he could not afterwards be required to

January Term, submit to a further examination, or to subscribe the exami-
   1861.    nation previously made.

BONNER        Verdict and judgment for plaintiff.
   v.
HOME INS. Co  *Cary & Pratt*, for appellant, contended that as the policy
offered in evidence in no wise resembled the absolute con-
tract set out in the original complaint, but was filled with
conditions which it was necessary the plaintiff should com-
ply with before the defendant would be liable upon it, it
was not a case of *variance* under sections 33 and 34, p. 725,
R. S., but a case of *entire failure of proof*, under section 35,
citing *Egert vs. Wicker*, 10 How. Pr. R., 193; *Cottrell vs.
Conklin*, 4 Duer, 45; *Belknap vs. Sealey*, 14 N. Y., 143. Un-
der the old system, the court had power to allow amend-
ments of this nature, but they were never allowed at the
trial, and never on any other terms than that of paying all
the costs subsequent to the mispleading, serving an amended
complaint and allowing the defendant time to answer. *Cot-
trell vs. Conklin, supra; Prindle vs. Aldrich*, 13 How. Pr. R.,
466. But if it is held to be a case of variance, the variance
was a *material* one. The fact that the adverse party is mis-
led and prejudiced by an amendment, need not always be
established by extrinsic proof. *Lyon vs. Blossom*, 4 Duer,
318, 329. That fact, and consequently the materiality of the
variance, may be, as they were in this case, apparent on the
face of the pleadings; and then the court must exclude the
evidence, or allow the amendment upon terms that "shall be
just." But if extrinsic proof was necessary, that the de-
fendant was misled by the variance, it was furnished by the
affidavit of its agent. As to the admissibility of the evi-
dence of Durand, as to what appeared upon the books of the
railroad company at Zanesville, counsel cited Cow. & H.'s
Notes, pp. 1112–13, in note 860; and as to the instruction
given in relation to the refusal of the plaintiff to submit to
further examination, &c., 2 Phil. Ins., pp. 498 to 505. An-
gell on L. & F. Ins., §§ 222 et seq.          •

   *Sloan & McFetridge, contra*, as to the amendment of the
complaint, cited *Fox River Valley R. R. Co. vs. Shoyer*, 7
Wis., 365; *N. Y. Iron Works vs. Smith*, 4 Duer, 362; 1
Kern., 368; 15 How. Pr. R., 399. The policy required the

assured to submit "to an examination." It does not require
that he should submit to repeated examinations, as often as
the agents of the company might choose to hold them. If
it did, then the power of annoyance would be unlimited and
intolerable.

*By the Court*, DIXON, C. J. The amendments proposed
by the respondent upon the trials were properly allowed.
By them no change or departure from the causes of action
originally set forth, was asked. The causes remain the same,
and the offer to amend amounted to nothing more than a
proposition to set them out with greater legal exactness and
certainty. It was not, as is contended by the counsel for ap-
pellants, a proposal to depart entirely from the grounds of
complaint first taken. Those grounds, which were already
in part correctly described, continued as before. The nature
of the actions was unchanged. They were still actions for the
recovery of the same sums of money upon the same policies of
insurance. Enough had already been correctly stated, so
that there could have been no mistake or misapprehension
in this respect, and so that it would seem to have been im-
possible for the appellants, their agent or attorneys, to have
been misled. The leading facts constituting the causes of
complaint, such as the dates, amounts and numbers of the
policies, the times of the commencement and expiration of
the risks, the description and location of the property in-
sured, and the names of the contracting parties, were accu-
rately stated in the first instance. Only the incidental and
less prominent features of the transactions, such as the con-
ditions and provisos contained in and annexed to the poli-
cies, had been omitted. Under these circumstances, how
can it, with any reason, be said, that the offer of the policies
had no tendency to prove the causes of action alleged, or
that after they were produced, those causes were "unproved,
not in some particular or particulars only, but in their en-
tire scope or meaning?" And how can it be said that the
appellants were "actually misled to their prejudice in main-
taining their defenses upon the merits?" It appears to us
that neither of these things can be rationally affirmed; that

January Term,
1861.

BONNER
v.
HOME' INS. Co.

the policies clearly tended to establish the causes of action so far as they had been stated; and that they were emphatically cases in which the causes of action were unproved in some particulars only, and not in their entire scope and meaning; and that, with the principal facts already so distinctly averred, the appellants could not truthfully say that they had been deceived. The facts stated had no such tendency, but the very opposite. If they ·were deceived, it must have been because they were obstinately blind to the truths contained in the complaints, and not because of their mistakes or imperfections. But, aside from the allegations of the·complaint, which, for all ordinary purposes, defined the causes of action as clearly and certainly as if they had been technically full and complete, it appears from the answers and verifications that· the appellants and their agents well understood what they were called to defend. Several special defenses, applicable to the real causes of action as they appeared after the amendments were made, were set up by the answers and verified by the oath of the agent. As against these things, it would have been a false and idle pretense if he had claimed that the appellants were misled by the averments of the complaint, or that he was surprised by the offer of the policies in evidence; and it is creditable to his honesty and integrity as a man that he did not do so. It would have been equivalent to saying that matters with which he was elsewhere perfectly familiar, were wholly unknown to him when in the presence of a court. He testified only "that he was taken by surprise by the amendment just allowed in this action." In other words, he was surprised that the court should be governed by the plain requirements of the statute. Unfortunately for his enterprise, the object of which was undoubtedly to delay the speedy and fair administration of justice, this was not the kind of surprise which the legislature contemplated, and the affidavit was rightly rejected. The appellants were bound to take notice that the court possesses the power to amend, and that it would, in proper cases, exercise it liberally in furtherance of justice and to prevent unnecessary delay and expense. It was for them to govern their action accordingly,

and to prepare their defense when good faith and fairness to
the opposite party would require them to do so. A fair in-
terpretation and proper observance of the provisions of the
statute demand this, and exclude the idea that either party
may repose upon technicalities for the purpose of defeat-
ing or delaying the action or defense of the other. See *Gil-
lett vs. Robbins*, [12 Wis., 319.] The authorities cited by the
counsel for the appellants by no means conflict with the
views here taken. They were clearly cases not coming
within sections 33 and 34, chap. 125, R. S., in which the
courts were authorized to disregard the variance, or to order
an immediate amendment without costs, but were of the
class provided for in section 35, in which the cause of action
to which the proof was directed, was " unproved, not in some
particular or particulars only, but in its entire scope and
meaning." As if the plaintiff should proceed in his com-
plaint as upon a promissory note, and upon the trial should
ask a recovery upon a covenant or a bill of exchange; or as
if he should set forth a cause of action for fraud or deceit, and
ask a judgment upon proof of a breach of contract, and the
like. In these and all similar cases, there would be an en-
tire departure from the cause of action set out, and it is to
such that the section obviously applies. In *Egert vs. Wick-
er*, 10 How. Pr. R., 193, the plaintiff, by his amendments,
proposed to change the entire gravamen and essence of his
complaint. A deed which was originally affirmed to be
good, was to be declared void because made to hinder and
defraud creditors. The averments with regard to the record-
ing of the mortgage were to be wholly changed; and the
mortgage itself was to be averred inoperative and void upon
entirely different grounds. Such a radical and complete
change in the point of attack was very properly held to be
inadmissible. So in *Cottrell vs. Conklin*, 4 Duer, 45, the
plaintiff, having complained against the defendant as the
guarantor of certain promissory notes, offered proof which
tended only to show that he was an indorser. The variance
was material and fatal. For, as the court observe, notwith-
standing a partial resemblance, the difference between a con-
tract of guaranty and a contract of indorsement are so wide

and essential, that it is impossible to say that the allegation of the one contract as the cause of action, is sustained by proof of the existence of the other.   And in *Prindle vs. Aldrich*, 13 How. Pr. R., 466, although the departure was less striking, it was nevertheless sufficiently obvious.   It was the difference between an action upon an account for goods sold and delivered, which upon a dispute had been compromised and agreed upon at certain fixed sums which the defendant had promised to pay to the plaintiff in full, and an action upon an open and unsettled account for the same goods, in which each item was the subject of controversy and proof. The action was upon an open account, which the testimony showed had been closed and stated at a certain sum; and although the plaintiff was permitted to amend upon terms, still it was considered that within the provisions of the Code requiring a plain and concise statement of the facts upon which a recovery is sought, the change was as great as if the plaintiff had been allowed to change a complaint for goods sold and delivered, to one upon a promissory note given on settlement, where there was a dispute in regard to the claim. None of these cases sustain the position of counsel, and they are all consistent with the ruling of the circuit court.

If the proper objections had been made, the receiving of the preliminary proofs furnished by the respondent to the companies, as general evidence in the actions, would have been erroneous.   But as those proofs were competent for the purpose of showing that the condition of the policies had, in that respect, been complied with, and as the objections were general, no advantage can now be taken of them.   The rule is universal, that when the evidence offered is competent for some purposes, but not for others, the party objecting or desiring to limit its effect, must distinctly specify the grounds of his objection, and then if they are not obviated by proper instructions to the jury, the error will be corrected on appeal.

The testimony of the witness Durand, as to the contents of the forwarding book kept at the railroad station at Zanesville, Ohio, whence the respondent claimed to have shipped a large portion of the goods alleged to have been destroyed

January Term, 1861.

BONNER
v.
HOME INS. Co.

by the fire, was properly rejected; not, however, because secondary evidence, in such cases, is wholly inadmissible, but for the reason that the custom of that company with regard to such books, and the manner in which that, in particular, was kept, were not sufficiently established. The rule would be entirely too loose, and a wide door to fraud and imposition would be opened, if such secondary evidence were admitted upon mere proof of the general usage of railroad companies. Had the custom of the company, and the general accuracy of the book, been first proved, we are inclined to believe that the evidence should have been admitted. If this had been done, and the book itself produced in court, it seems clear that it should have been received. It would not have been rejected as immaterial. As an authentic source of information in regard to some of the facts collaterally put in issue, it would have had a most important bearing upon the cases. But as the book was not within the control of the parties, and was out of the reach of the process of the court, and as it was evidently such a document as the railroad company would not willingly part with, it would seem that these circumstances ought to constitute a sufficient foundation for admitting secondary evidence of its contents. Such being the best evidence which the party could possibly produce, it appears to us that it ought, from necessity, to be received. At all events he would be bound to go no further than to show that the railroad company refused to deliver it. 3 Monroe, 532; 9 Cowen, 115; 7 Pick., 10; 3 Dess. Eq., 290; 3 Martin (N. S.), 287; 5 Day, 298; 13 John., 58.

It is very evident to us that the judge erred in giving the third instruction asked by the respondent's counsel. By the eleventh condition of insurance annexed to the policies, it was stipulated, among other things, that the insured should, if required, submit to an examination, under oath, by the agent or attorney of the company, and answer all questions touching his knowledge of anything relating to such loss or damage, or to his claim therefor, and subscribe such examination, the same being reduced to writing; and until such examination was had, being required, the loss should not be

deemed payable. It was proved, without dispute, that such examination was, in due time, required; that it was, in part, had, reduced to writing, but not subscribed, in the month of November, 1859, and, without objection on the part of the respondent, adjourned for two or three weeks, when it was to be resumed and completed. On the 6th of December, the agent called upon the respondent for that purpose, when he refused to submit to a further examination, and also to sub scribe that which had been already taken. The judge charged that the respondent was obliged to submit to but one examination, and that if the agent undertook to make it, and he answered all questions then put to him, and was ready at that time to subscribe to the examination so made, he could not afterwards be required to submit to a further examination, or to subscribe that which was so taken. No doubt the companies should be held to a reasonable and just exercise of the privilege reserved, but the rule here laid down is too inflexible and severe. It would preclude an adjournment for the shortest space of time and for whatever cause, and often render the stipulation nugatory and useless. It should be construed so as to favor the objects intended, and not defeat them. And, without determining how often, or under what circumstances, the agent would be entitled to adjourn or renew the examination, we are of opinion, upon the facts before us, that he was entitled to proceed with it in December, and that the refusal of the respondent was captious and unwarranted. The adjournment for that period of time must be presumed to have been made with his consent, as no objection appears to have been taken to it. The judge, therefore, should have dismissed the actions as prematurely commenced; for until the examination was had, the losses were not, by the terms of the policies, due and payable.

Judgments reversed, and new trials awarded.