## Jackson's Estate.

*Transfer inheritance tax—Gifts by will distinguished from assignments pursuant to contract.*

The testator, who was president and a large stockholder of the J. Company, entered into a written agreement with F., whereby the latter agreed to purchase 125 shares of the common stock, in consideration of which purchase the testator agreed, without further consideration, to give him an additional number of shares, not exceeding 125, if he (F.) owned that many at testator's death, and he agreed to direct his executors to make proper assignments thereof. On July 27, 1916, he gave written directions to his executors to assign to F., provided he should be living and connected with the company at testator's death, so much of his (testator's) stock as would be necessary to make him, by virtue of said assignment and the ownership of his other stock, a full one-half owner of the capital stock of the company: *Held*, that the paper of July 27th was testamentary, and that F. took by virtue of that paper and not by virtue of the original contract, and, hence, his gift was subject to the transfer inheritance tax.

Exceptions to adjudication. O. C. Phila. Co., April T., 1919, No. 649.

*Horace M. Rumsey*, for exceptants; *H. Horace Dawson*, contra.

THOMPSON, J., Jan. 10, 1924.—Testator died July 28, 1918; on Jan. 1, 1910, as president of the J. T. Jackson Company, he entered into a written contract with Frank P. Felton, Jr., wherein Felton agreed to purchase 125 shares of the common capital stock of the J. T. Jackson Company, a Pennsylvania corporation, with a total capital stock of $100,000, divided into 1000 shares of the par value of $100 each, which was, according to the testimony, to be paid for by Felton in instalments.

The second clause of the contract of purchase provided as follows:

"In consideration whereof, said party of the second part (Jackson) agrees that he will, by his last will and testament, give and bequeath unto the said party of the first part (Felton) without further consideration an additional number of shares of said capital stock, equal to the number of shares which said Frank P. Felton, Jr., may own at the time of said Joseph T. Jackson's death (not exceeding, however, 125 shares), and direct his executors to transfer and deliver said shares to said Frank P. Felton, Jr., within thirty days after said Joseph T. Jackson's death, provided, said shares purchased by him shall have been paid for in full; provided, however, that if said party of the first part shall not at such time be the owner of 125 shares of stock in said corporation, the heirs, executors, administrators or assigns of the said party of the second part shall not be under obligation to assign, transfer and set over to the party of the first part a greater number of shares of said stock than the said party of the first part shall then own."

It was conceded by the Commonwealth that, inasmuch as the decedent had covenanted and agreed that he would by his last will and testament give and bequeath to Frank P. Felton, Jr., without further consideration, the additional stock provided for in said agreement, this covenant to deliver the

4 D. & C.

said additional stock at death might be fairly said to have formed a part of the consideration moving Frank P. Felton, Jr., to execute the contract of purchase, and that the delivery of said stock to him by the executors in conformity therewith was but a fulfillment of the obligations of the decedent, and, therefore, was not subject to transfer tax.

It should be particularly noted that the contract expressly limits the gift to 125 shares to Felton.

The exceptions before the court are confined solely to the interpretation of the following document left by the decedent, viz.:

"To the Executors of J. T. Jackson: July 27, 1916.

"On my decease I hereby authorize and request my Executors to make over and assign to Frank P. Felton, provided he, at that time, is living and still connected with the business of J. T. Jackson Company, so as to make him at that time by the above, and other stock arranged for, a full one-half owner in the capital stock of J. T. Jackson Company.

"This paper duly signed and witnessed shall constitute full authority for my said executors to make said assignment of the stock named.

"Witness my hand and seal on above date.

"Witness, Ethel M. Granger.      JOSEPH T. JACKSON    (Seal)."

Judge Gest in his adjudication filed, in interpreting this written paper, found as follows:

"This is, as it seems to me, really testamentary in its character. It is in no sense part of the contract of 1910 or in pursuance or fulfillment thereof. It was, as it purports to be, simply a request to the executors on his decease to assign $25,000 of the par value stock to Frank P. Felton, Jr., if at that time he was living and connected with the business. There is nothing to show that any further consideration was given for the paper by Felton; certainly none was recited, and the seal adds no force to it. If it did, testators would give all of their legacies in this form and so exempt their estates from tax. Strictly, the paper should have been admitted to probate, but as the residuary legatee makes no objection, and the only question concerns the tax, the auditing judge will not insist upon it. The transfer is subject to 5 per cent. transfer inheritance tax."

How any other conclusion could be reached by the auditing judge is difficult to imagine. The testamentary disposition of 250 shares of stock to Felton forms no part of the agreement of purchase of 1910, nor is it mentioned or referred to therein; nor was there a word of testimony offered connecting the two papers in any manner whatsoever; it is solely and exclusively a voluntary gift to Felton by the decedent, taking effect at death. Nor can it be considered a contract, for Felton assumed no obligation thereunder (he was employed by the Jackson Company, not by testator) and could have severed his connection with the Jackson Company at any time.

If a paper offered for probate is testamentary in character, is executed in the manner provided by statute, and its purpose is that the whole or any part of the maker's estate shall be given after his death to the distributees named therein, it is in law a will and may be probated as such, though in form a deed or contract. See O'Connor's Estate, 273 Pa. 391; Turner v. Scott, 51 Pa. 126; Coulter v. Shelmadine, 204 Pa. 120; Megary's Estate, 206 Pa. 260.

For the above reasons, the exceptions are dismissed.