# Turner *et al. versus* Scott.

1. A father executed an "Indenture" to his son, with general warranty, for a tract of land in fee, in consideration of love and affection, performing certain services and maintaining grantor's wife if she survived him, reserving the land to the grantor for his life, the "*conveyance in no way to take effect until after his decease.*" *Held*, that this was a testamentary instrument, and therefore revocable.

2. If any effect is to be given to the words of reservation, they limited the fee to take effect *in futuro*, which at common law can be done only when an estate is *granted*, not *reserved*.

3. The essence of the definition of a will, is that it is a disposition to take effect after death; and, whatever the form of the instrument, if it vests no present interest, but only direct what is to be done after the death of the maker, it is testamentary.

4. The covenant of general warranty would protect the consideration and enable the son to recover damages if he rendered the services, but will not change the operative words of the grant; for, these words being limited to take effect only after the death of the grantor, were revocable words.

ERROR to the Court of Common Pleas of *Erie county*.

This was an action of ejectment to recover a tract of ninety-one acres of land in Erie county, late the estate of John Scott, deceased, under whom both parties claimed.

The titles under which the parties respectively claim, and the facts, are stated in the preceding case of Perry *v.* Scott, *ante* p. 119.

John W. Scott, the defendant in error, having gone into possession of the land under the judgment in that case, the plaintiffs in error brought an ejectment against him to recover back the possession.

The plaintiffs, Parney P. Turner, Anna Sandford, Nancy Holliday and Abner Scott, were children and devisees of John Scott.

The defendant is the grantor in the "indenture," mentioned in Perry *v.* Scott. The other plaintiffs are the husbands of the female devisees.

The plaintiffs gave the will in evidence, with some facts as to possession, and the defendant gave in evidence the "indenture." The case depended upon whether the latter instrument operated, as a present conveyance, or a testamentary writing.

The plaintiffs submitted the following points:—

1. The court are requested to charge the jury that the instrument of 22d November 1849, is a testamentary paper in the nature of a will, revocable by the testator, and was so revoked by the will of the 26th day of February 1861. That the clause and this conveyance in no way to take effect until after the decease of the said John Scott, the grantor, "is binding upon the parties to the instrument, and that to say that John Scott might not revoke the instrument in his lifetime, would be giving to the instrument some effect during his lifetime, in plain violation of

[Turner *v.* Scott.]

that clause in the instrument which was plainly only intended to make provision for his son, in case he should die without any further disposition being made of his property.

2. That if said clause were rejected altogether, and the instrument construed to be a deed of conveyance, a freehold cannot be created *in futuro* with only a life estate reserved to support it, instead of a life estate granted, but the instrument is wholly inoperative.

The court (Derrickson, A. J.) charged the jury as follows:—

"The plaintiffs claim the land in controversy by devise to them in the will of John Scott, made in 1861, and registered in 1864. The defendant, by a deed to him from the same person, executed and delivered in November 1849, and recorded in January 1850. The validity of this instrument, *as a deed*, is disputed by the plaintiffs, for the reasons that by words contained in it, it was 'in no way to take effect till after the death of the grantor,' and that he was to have 'the entire use and possession of the land during his natural life,' and contend that it is only and nothing more than a will, and consequently liable to revocation. If this construction is to prevail, the plaintiffs must also prevail. Is it the correct one ?

"The instrument has most certainly none of the usual formulas, peculiarities or language of a will on its face or about it. It has parties to it, agreeing to contract with each other, and considerations which are legitimate in themselves, either one of which would suffice to rest a grant upon ; and if the one which binds the son to reside with and labour for his father is not executed, it is open to enforcement. Then again, the language used for the passing of the land is that of a grantor and not of a devisor, while that which creates the covenant of warranty is foreign to that of a will, though peculiar to grantors and deeds of conveyance. To say then that this is a will, is to confound all distinctions between words and language which serve to make one, and those which go to make a deed. The sentence, 'and this conveyance in no way to take effect till after the decease of the grantor,' if taken according to its very letter, would go far towards making the deed inoperative ; while it would also force the conclusion that the parties to it were ignorant of what they were doing, or what they wished to accomplish. Ordinary charity for men's actions would not permit this, nor will the law presume it. The relations the parties held to each other, and the mutual covenants entered into by them, forbid a conclusion of this kind. The meaning to be given to this sentence, taken in connection with other parts of the deed, is that the deed and the grant it makes, are not to interfere, '*in any way*,' with the grantor's reserved or excepted life estate. Nothing more can be drawn from the sentence than this, and with this it must be satisfied.

[Turner *v.* Scott.]

" There is nothing in common with a will and a deed, except that the object of either or both may be, as they generally are, to create and vest estates in others ; but the language of one is diverse from that of the other, and while one is ever liable to change, alteration or revocation at the pleasure of its author, and never becomes active and operative till after his death, the other is the concentrated will of those who are the parties to it, and can no more be abrogated or destroyed by one than it could, in the first instance, be created by him alone ; and the estate it creates, if such is its purpose, is a present one, though its enjoyment may be made subject to contingencies and limitations.

" Admitting, however, that the paper in question is a deed, and not a will, its validity is again questioned by the plaintiffs' counsel, for the reason that it undertakes ' to create a freehold estate *in futuro*, without a particular estate to support it.    In the earlier periods of the common law, the objection here raised would have been fatal to the effectiveness of the grant, for the want of livery of seisin ; but the Statute of Uses and our own recording acts have changed the law from its ancient teaching, and the deed before us, instead of being declared void for the objectionable feature on its surface, will be held and construed to be a bargain and sale by the grantor and that he will stand seised of the estate contemplated by it during his life, for the use of his grantee, to be enjoyed by him after the reserved life estate has expired.

" These instructions will suffice as answers to the points made by counsel, and to require a verdict for the defendant."

The plaintiffs excepted to the charge, and the jury found for the defendant.

In this court the plaintiffs assigned for error, that the court did not answer their points in the affirmative and directed a verdict for the defendant.

*S. E. Woodruff*, for plaintiffs in error.—The instrument under which defendant claims is a testamentary paper, being " a disposition of property to take effect after the death of the person making it," 3 Kent's Com. 501.    By this instrument, John Scott gives the property to his son after his death, and strengthens that by saying, " *in no way* to take effect during my life."    The con-siderations expressed are usual in a devise to a son, and the son took the instrument *cum onere*, that it was to have no effect in the father's life.    To say that this instrument prevented the father from disposing of the land would give it a most important " *effect during (his) life.*"    A deed which in terms was not to operate until after the testator's death, has been held to be testamentary : Redfield on Wills, p. 170 ; Gage *v.* Gage, 12 N. H. 731 ; Ingram *v.* Porter, 4 McCord 198 ; Milledge *v.* Lamar, 4 Dessaus. 617, also Hilliard, § 8 ; Bartholomew *v.* Henly, 3 Phillimore 318 ;

[Turner v. Scott.]

Masterman v. Maberly, 2 Hagg. 247; Jackson v. Henderson, 1 Dessaus. 543; Redfield, p. 272; Habergham v. Vincent, 2 Ves. Jr. 204; Perry v. Scott, ante p. 119; Rose v. Quirk, 6 Casey 225.

If the instrument was a conveyance, could a freehold be created *in futuro* with a life estate *reserved*, and not *granted* to support it? The obvious construction of the instrument is that no *present* interest passed, and if not, then no estate whatever passed. When it is intended to grant a freehold to be enjoyed in future, it is necessary to *create* a previous particular estate: 2 Bl. Com. p. 164.

A bargain and sale was nothing more than the sale of the use, the possession remaining in the bargainor. The Statute of Uses annexes the possession to the use, and thus completes the purchase: Shep. Touch. 221. John Scott inserted the clause that the "conveyance should in no way take effect," &c., to prevent either title or possession from passing from him. But if actual seisin were not necessary, still the remainder must commence, and pass out of the grantor at the creation of the particular estate: 2 Bl. Com. pp. 167–168.

The consideration is not such as will require the grantor to stand seised to the use of grantee. There is a wide difference between construing a deed as a covenant on part of grantor to stand seised to the use of grantee, and a covenant on part of grantee to stand seised for use of a third party: 2 Hare & Wallace, notes to Amer. Lead. Cases, p. 391; Rowan's Appeal, 1 Casey 293.

*J. C. & F. F. Marshall*, for defendant in error.—1. Was the instrument a testamentary paper, or a deed? It has no features of a testamentary instrument: Hileman v. Bouslaugh, 1 Harris 344. It has all the requisites of a deed: a valuable consideration, the terms, grant, bargain, sell, &c., *habendum* and covenant of warranty. John Scott intended to convey a fee, subject to his life-estate. The son understood he was to get such estate. The intention must govern.

2. The clear meaning of the parties to be found in the instrument is, that it conveyed to the son an estate in fee, reserving a life estate to grantor. It was a conveyance subject to an encumbrance. Livery of seisin has nothing to do with it. By sec. 4 of Act of 28th May 1715, deeds have the same effect to give seisin as deeds of feoffment with livery of seisin: McKee v. Pfout, 3 Dall. 489; Dunwoodie v. Reed, 3 S. & R. 435; Sergt. Land Law 230, 242.

Recording is equal to livery of seisin. There is no difference in principle between a deed in fee reserving an estate for years, and reserving a life estate: putting on record is notice to all the

1 P. F. SMITH—9

[Turner *v.* Scott.]

world. The grantor and his heirs would be estopped. Hence in Pennsylvania a life estate *reserved* will perform the same functions as a life estate *granted*.

3. Does not the deed take effect as a covenant to stand seised to the use of the grantee? Equity does not regard the mode of conveyance so much as the intent of the parties; and a deed of bargain and sale may be construed *a covenant to stand seised* when both a money consideration and relation by blood appears in the deed: Sprague *v.* Wood, 4 W. & S. 195; Fisher *v.* Strickland, 10 Barr 348.

"Lease and release" was to avoid necessity of *actual entry*: 4 Kent. Comm. 493.

Deeds acting under the Statute of Uses may give an estate of freehold to commence *in futuro:* 2 Prest. on Convey. 127. A grant to A. merely, creates a life estate only; but when a party pays his money, and the *intention* is clear that a fee was to be conveyed, a use, which chancery would execute, is raised: Lynn *v.* Downs, 1 Yeates 520; McGirr *v.* Aaron, 1 Penn. Rep. 49. Wherever a deed of conveyance, &c., is made, and the intention of the grantor, &c., is clear, and a technical principle might defeat the intention, courts will declare the grantor a trustee, and the deed a covenant to stand seised for the use of the grantee: Martin *v.* McCord, 5 Watts 495; Allison *v.* Kurtz, 2 Id. 188; Wilt *v.* Franklin, 1 Binn. 519; Witman *v.* Lex, 17 S. & R. 96. The words bargain and sell make a covenant to stand seised: 4 Cruise's Dig. tit. 32, ch. 10, § 2. A bargain and sale for a pecuniary consideration to commence *in futuro* will operate as a covenant to stand seised according to the intention, without technical words: Jackson *v.* Swart, 20 Johns. 85; Barrett *v.* French, 1 Conn. 354; Wallis *v.* Wallis, 4 Mass. 135. A deed to a son reserving a life estate to the grantor is a covenant to stand seised for grantee: French *v.* Frend, N. H. R. 258; Jackson *v.* McKinney, 3 Wend. 233; Jackson *v.* Sebring, 16 Johns. 515, 9 Wend. 641.

The opinion of the court was delivered, January 14th 1867, by WOODWARD, C. J.—The great question in the case, and the only one we shall discuss, is, whether the indenture of 22d November 1849, by John Scott to his son John W. Scott, conveying the farm in dispute, was a deed or a will. Not whether the parties called it a deed, nor whether it contained the customary words of a deed; but whether, according to the intentions expressed upon the face of the instrument, it can in law have the effect and operation of a deed. This is our question, and it is important to place before our minds, in a very distinct light, the instrument to be interpreted.

John Scott, an old man living on his farm, made, what is called,

[Turner *v.* Scott.]

" This Indenture" to his son John W. Scott, at the above-mentioned date, upon a consideration of natural love and affection, and " also that the said John W. Scott hath this day agreed to live with the said John Scott, and labour for and assist him in working the land hereinafter described, and maintain Patience Scott the wife of the said John Scott, if she survives him, during her natural life," conveying the said farm by metes and bounds to him in fee simple " excepting and reserving nevertheless, the entire use and possession of said premises unto the said John Scott and his assigns for and during the term of his natural life ; and this conveyance in no way to take effect until after the decease of the said John Scott the grantor." The *habendum* was to have and to hold the premises " after the decease of said John Scott," to him the said John W. Scott, his heirs and assigns, &c.

After the father and son commenced their joint possession under this deed they quarrelled, and the father turned the son out by an action of ejectment, and kept the sole possession in himself till he died, his wife Patience having died before him.

Before his death, to wit, on the 26th February 1861, he made a formal will in which he revoked all former wills, " and particularly a certain will and testament (in form as a deed) recorded in the recorder's office of said county of Erie, in deed-book U., p. 716, witnessed by Miron Hutchinson and George H. Cutler, and I hereby give and assign as the reason of revoking and making void said will, that my son John W. Scott and his wife have failed to treat me with filial affection, and to comply with the conditions upon which I made said will." He then goes on to devise the land in question to his daughters, Nancy Holliday, Anna Sanford, Parney P. Turner and his son Abner Scott, the plaintiffs in this action.

These devisees succeeded to the possession, but lost it by an action of ejectment brought against them by John W. Scott, and this is a second ejectment brought by them to regain the possession. If the deed of 22d November 1849 vested the title in John W. Scott, the subsequent will was inoperative of course, so far as concerned this land ; but if the deed vested no present interest, and was intended to operate as a testament, it was very expressly revoked and repealed by the subsequent will, and plaintiffs as devisees under this will have the title.

The testator called and treated the deed as a will, but not until after he had quarrelled with his son and turned him out of possession. When he made the instrument he called it an indenture, and permitted his son to record it as a deed. His treatment of it as a will therefore proves nothing. But what is the effect of the reservation clause above quoted ? Undoubtedly, a life estate was reserved to the grantor with the entire use and possession of the premises, and of course the instrument could not take effect as a

" *conveyance*" until after his death, and such was the declared intention. The learned judge construed the latter clause of the reservation as a protection of the life estate, but it needed no protection for it remained in the grantor, being excepted out of the grant as fully as it was capable of existing. But if these pregnant words were added with some such mistaken notion of the parties, and it is quite possible they were, they are an emphatic declaration that no interest should be considered as presently conveyed to interfere with the life estate, whilst the *habendum* is equally express that the estate intended to be conveyed to John W. Scott should commence at the death of the grantor. Without straining or unduly emphasizing any of these words, it is impossible to doubt, that if any effect whatever is to be given to them, they limited the fee to take effect *in futuro*. At common law this can only be done when a particular estate, to take effect presently, is *granted*, not *reserved*, to support the fee. If the question was upon John W. Scott's title under the deed, without any subsequent will in the case, and we should be obliged to say that as an attempt to create a freehold *in futuro* without the grant of a particular estate to support it, the deed was·void, we might, perhaps, support it as a covenant to stand seised to his use. I say *perhaps*, because the case has not been fully considered in that aspect, and the reason why we do not so contemplate it is, that there being a subsequent will it becomes a mere question of interpretation, whether the former instrument was testamentary in its character or not. If it was testamentary, then it ought not to be construed as a covenant to stand seised, there being a later will. Had there been no later will, the deed though testamentary might perhaps have been supported as such a covenant. We come then to the real question, was the deed essentially a testamentary instrument.

Swinburne defines a testament to be a " just sentence of our will touching that we would have done after our death. And because some there be who do censure this excellent definition to be defective, though unworthily," he makes a full exposition of the meaning of every word in the definition. The only distinction he makes between a testament and a will is the distinction between *justa sententia*, and *legitima dispositio*. But the essence of both is that it is a disposition to take effect after death, and this is adopted by Judge Redfield, the latest commentator, in his work on the Law of Wills, p. 5.

In the case of Habergham *v.* Vincent, 2 Ves. Jr. 204, the question was, whether two instruments, one in form a will and the other in form a deed, did not together constitute a will, and the case was greatly considered. It was first argued before Lord Thurlow, who took a long time to consider of it and then directed a case to be stated for the opinion of the Court of King's Bench.

[Turner v. Scott.]

In consequence of too short a statement in sending this case to law, the second instrument was there considered a deed, and the other questions were ruled accordingly. Afterwards when the case came before Lord Chancellor Loughborough, he said he felt so strongly that this instrument (the deed) was to be construed as testamentary, that he must have the assistance of two of the judges to sit with him at the argument; and accordingly Mr. Justice Buller and Mr. Justice Wilson, in accordance with a custom which sometimes is practised in the High Court of Chancery, sat with the Chancellor and delivered separate, though concurring opinions. Mr. Justice Buller, in his opinion, said: " When this case was argued in the King's Bench, no one of the cases quoted here by the attorney-general was mentioned or alluded to. I freely confess," he added, " they did not occur to me. But those cases have established that an instrument in any form, whether a deed-poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will. The cases for that are both at law and in equity, and in one of them there were express words of immediate grant and a consideration to support it as a grant, but as upon the whole the intention was that it should have a future operation after death, it was considered as a will." To the same effect were the other opinions in this case. The cases to which Justice Buller alluded as cited by the attorney-general (Sir John Scott) were West's Case, Moore 177, where it is laid down that if there is a letter expressing the disposition as to land, it is sufficient; Greene v. Proude, 1 Mod. 117, where, though the instrument was sealed and delivered as a deed, it was held to be a will; Metham v. The Duke of Devonshire, 1 P. Wms. 529, where a will directed the executors to pay 3000l. as the testator should afterwards appoint. He afterwards made a deed of appointment, which was taken as part of the will.

I refer also to cases cited in note 9 of 1 Williams on Executors, p. 61; and Rowan's Appeal, 1 Casey 293. But it is supposed the covenant of general warranty in the deed estops the plaintiffs. Undoubtedly the covenant of warranty protects the consideration, and as that was in the form of services to be rendered, John W. Scott will be entitled to his action for damages, *if he rendered these services*. This question has not been investigated in the present action; but if the old man turned the son out of possession of the premises and took exclusive possession to himself, and died 'in such exclusive possession, it is not very likely that a breach of covenant will be enforced against his personal representatives, which was not thought worth asserting against the old man himself.

However this may be, we see nothing in the covenant of warranty to change our construction of the operative words of the

[Turner *v.* Scott.]

grant. As these words were expressly limited to take effect only after the death of the grantor, they were necessarily revocable words. The doctrine of the cases is, that whatever the form of the instrument, if it vest no present interest but only appoints what is to be done after the death of the maker, it is a testamentary instrument. It signifies nothing that the parties meant to make a deed instead of a will. If they have used language which the law holds to be testamentary, their intention is to be gathered from the legal import of the words they have employed, for all parties must be judged by the legal meaning of their words.

The revocable words of the first instrument having been revoked by the subsequent will, the estate must go to the devisees; and John W. Scott, if entitled to any redress, must seek it by a personal action against the legal representatives of the decedent.

The judgment is reversed, and a *venire facias de novo* is awarded.

AGNEW, J., dissented.