*In re* COSGROVE'S ESTATE.

1. WILLS—PAPER OF INSTRUCTIONS—INTENT.

A paper merely expressing an intention to instruct a solicitor to prepare a will making a particular disposition of property will not be admitted to probate in the absence of evidence of intention that such paper should have a testamentary operation.

2. SAME—FINAL SHAPE.

A will must be perfect in the testamentary sense and designed as something final in shape, and not preliminary, or it cannot take effect as a will.

3. SAME—EXECUTION OF MEMORANDUM OF INSTRUCTIONS.

Mere drafts or minutes of wills are inadmissible to probate, and a mere unexecuted intention to leave by will is of no effect but a paper drawn up as a memorandum of instructions and then duly executed and attested as a will operates in its final character because of the corresponding change of purpose which the testator had properly carried out.

4. Same—Testamentary Intent—Presumptions—Evidence.

When a person of testamentary capacity, acting of his own free will, intentionally executes with formalities required by statute a writing which in form and substance is testamentary, *animus testandi* is usually presumed, but oral evidence as to the circumstances surrounding execution is admissible for the purpose of showing either an absence or presence of testamentary intent.

5. Same—Execution of Temporary Handwritten Draft.

A pencil draft of paper, entitled "Will," which was in testator's own handwriting, and handed to another who was requested to check real estate descriptions therein and type a copy for his execution but who added attestation clause and suggested that testator execute it pending preparation of typewritten instrument, and draft was then duly executed by testator, *held*, properly admitted to probate, since testator's signature thereon and attestation of witnesses in his presence indicated his change of purpose to have draft operate as his will pending execution of typewritten copy.

6. Same—Intent—Blank Spaces.

An instrument is not prevented from operating as a will, if so intended by the testator, merely because the executor is not named; and blank spaces in the body of a will do not invalidate it if the instrument is coherent and consistent.

7. Same — Witnesses—Request of Testator—Statutes—Voluntary Subscribing of Names.

Proposed will would not fail because attesting witnesses signed voluntarily rather than at the request of testator under statute prescribing formal requisites but which does not expressly require the testator to request the witnesses to subscribe the will (3 Comp. Laws 1929, § 13482).

8. Same—Request of Testator to Witnesses.

Even though statute required that testator request witnesses to subscribe will, a formal request would not be necessary and either an implied request or an assent to their signing would be sufficient (3 Comp. Laws 1929, § 13482).

9. Same—Statements of Testator—Evidence—Trial Without Jury.

In will contest tried without a jury, admission, subject to objection, of testimony relative to statements alleged to have been made by deceased during his last illness to the effect that he

had made a will *held*, not error, where trial court, in rendering his opinion, made no reference thereto and apparently did not consider it.

Appeal from Ottawa; Miles (Fred T.), J. Submitted June 7, 1939. (Docket No. 27, Calendar No. 40,532.) Decided September 5, 1939.

In the matter of the estate of Augustus M. Cosgrove, deceased. Richard D. Cosgrove presented the will of Augustus M. Cosgrove for probate. William Cosgrove by Samuel Pender, guardian, and others filed objections thereto. From order allowing will to probate, contestants appealed to circuit court. Judgment allowing will to probate. Contestants appeal. Affirmed.

*Louis H. Osterhous,* for proponents.

*Leo C. Lillie* and *Harvey L. Scholten,* for contestants.

CHANDLER, J. On October 6, 1937, Augustus M. Cosgrove called at the office of Willamena Young, manager of the Michigan Title Company abstract office in the city of Grand Haven. He carried with him a six page document written by himself in pencil. Except for signature, attestation clause and subscription of witnesses, the document was in form a will by the terms of which the testator's real and personal property were to be distributed.

Mr. Cosgrove said: "Miss Young, will you copy this will for me?" and she replied, "Yes, I will." He then gave her his tax receipts and requested that she check the property descriptions in the will against the descriptions in the abstract office records. When she indicated that she was too busy to type-

write the will that day, he told her to do it at her own time and added that he was going to Ohio. Miss Young asked, ''Would you like to sign this will in case anything should happen?'' Mr. Cosgrove answered, ''Yes, I would, Miss Young, and that is a good suggestion.'' Thereupon, he signed the instrument before Miss Young and another woman, and the latter persons subscribed their names as witnesses thereto. In Mr. Cosgrove's presence, Miss Young filled in the date in ink and wrote the attestation clause, whereupon Mr. Cosgrove left the office.

Subsequently, Miss Young made a typewritten copy of the will. After Mr. Cosgrove returned from Ohio, he informed her that he would come to her office and sign the typewritten copy of the will, but before having done so, he became ill and died on November 15, 1938.

The pencil draft of the will was admitted to probate in the probate court against the objections of the heirs at law. The heirs at law now appeal from the decision of the circuit court, which also admitted the document for probate as the last will and testament of Augustus M. Cosgrove, deceased.

The decisive question is whether Mr. Cosgrove intended at the time he executed the document in question for it to operate as a testamentary disposition of his property.

It is the theory of the contestants that the document which the deceased executed was not intended by him to be his will, but was merely to serve as a memorandum for the guidance of Miss Young in typing the will in final form. Although this may have been his original intention, from the record it seems clear that at the time the deceased executed the instrument, he did so with testamentary intent.

The English rule is stated in 1 Jarman on Wills (7th Ed.), p. 39, as follows:

"A paper merely expressing an intention to instruct a solicitor to prepare a will making a particular disposition of property, will not be admitted to probate in the absence of evidence of intention that such paper should have a testamentary operation. But instruments headed 'Plan of a will,' or 'Heads of a will,' or 'Sketch of my will,' or 'Memorandum of my intended will,' or 'Notes of an intended settlement,' have been held to operate as valid testamentary dispositions, if duly executed."

In 1 Schouler on Wills, Executors and Administrators (6th Ed.), p. 422, § 346, the American view is thus expressed:

"Notwithstanding English precedents, we may regard it as the settled doctrine of most American states, that a will must be perfect in the testamentary sense, and designed as something final in shape, and not preliminary, or it cannot take effect as a will; and this, in conformity to the American policy, which prescribes certain formalities of execution as indispensable, including a due attestation by witnesses. Mere drafts or minutes of wills are therefore inadmissible to probate, and a mere unexecuted intention to leave by will is of no effect. So a paper drawn up as a memorandum of instructions and then duly executed and attested as a will, would of course operate in its final character because of a corresponding change of purpose which the testator had properly carried out, and instructions for a will which have been duly executed as final may be probated."

In *Merrill* v. *Boal,* 47 R. I. 274, 283 (132 Atl. 721, 45 A. L. R. 830), it was said:

"When a person of testamentary capacity, acting of his own free will, intentionally executes, with the formalities required by statute, a writing which in form and substance is testamentary, *animus testandi* is usually presumed. *Turner* v. *Scott,* 51 Pa. 126;

*Barnewall* v. *Murrell,* 108 Ala. 366 (18 South. 831), but oral evidence as to the circumstances surrounding the execution of the instrument is admissible for the purpose of showing either an absence or presence of testamentary intent.''

The record shows that the deceased handed Miss Young the paper in question with a request that she check the real estate descriptions therein and then typewrite a copy of the same for his signature. This document was entitled ''Will'' and began as follows:

''I, August M. Cosgrove of the city of Grand Haven in the county of Ottawa and State of Michigan, being of sound mind and memory and understanding do make my last will and testament in manner and form following.''

It cannot be argued that the document did not contain the provisions he desired to have therein. It was written in his own handwriting and was complete in form except for signature, attestation, and the name of the executor. But it is claimed that Mr. Cosgrove did not intend this specific document to operate as his will. The testimony of Miss Young indicates that he signed the document at her suggestion because he was going away before the final draft would be prepared, just in case ''anything should happen.'' No fraud or undue influence in procuring the testator's signature is alleged and Mr. Cosgrove stated that signing the will was ''a good suggestion.''

In our opinion the signature by the testator of his pencil draft and the attestation of witnesses in his presence indicated a change of purpose by him to have the draft operate as his last will and testament pending execution of the typewritten copy.

''A regular paper regularly executed speaks for itself, and the *animus testandi* is naturally in-

ferred." 1 Schouler on Wills, Executors and Administrators (6th ed.), p. 432, § 355.

An instrument is not prevented from operating as a will, if so intended by the testator, merely because the executor is. not named; and blank spaces in the body of a will do not invalidate it if the instrument is coherent and consistent. *Barnewall* v. *Murrell,* 108 Ala. 366 (18 South. 831); *Thornton* v. *Herndon,* 314 Ill. 360 (145 N. E. 603); *Paglia* v. *Messina,* 270 Mass. 1 (169 N. E. 423); *Southworth* v. *Southworth,* 173 Mo. 59 (73 S. W. 129); *DesPortes* v. *DesPortes,* 157 S. C. 407 (154 S. E. 426); *Langfitt* v. *Langfitt,* 108 W. Va. 466 (151 S. E. 715).

Appellants also contend that the proposed will fails because the witnesses subscribed voluntarily rather than at the request of the testator. The statute, 3 Comp. Laws 1929, § 13482 (Stat. Ann. § 26.1065), provides:

"No will made within this State * * * shall be effectual to pass any estate, whether real or personal nor to charge or in anyway affect the same, unless it be in writing and signed by the testator or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses."

It will be noted that our statute does not expressly require the testator to request the witnesses to subscribe the will. In the case of *In re Cummings' Estate,* 92 Mont. 185 (11 Pac. [2d] 968), it was held that acts and conduct may be shown to indicate that an instrument was intended as the testator's will, and a request that witnesses sign may come from another if there is intelligent acquiescence by the testator. Other cases holding an express request by the testator unnecessary are: *In Matter of Estate of Johnson,* 100 Cal. App. 676 (280 Pac. 987); *Farm-*

*er* v. *Farmer*, 213 Ky. 147 (280 S. W. 947); *In re Lagershausen's Estate*, 224 Wis. 479 (272 N. W. 469).

Even in those states that require a request to the witnesses, a very liberal interpretation is given to the statutory provisions and a formal request is not necessary to the witnesses to sign, but either an implied request or an assent to their signing is sufficient. 1 Schouler on Wills, Executors and Administrators (6th Ed.), p. 584, § 512, and cases cited.

The contestants claim that certain testimony relative to statements allegedly made by the deceased during his last illness to the effect that he had made a will; that he had left it at the abstract office before going to Ohio; and that the will was a good one and just what he wanted, were inadmissible. The trial court said, when the evidence was offered by proponents:

"Of course, at the moment, I don't think it is admissible, but I will let you put it on the record, and then if I should determine it to be admissible—

"*Mr. Osterhous:* All right; take it subject to the objection."

The case was tried without a jury and the trial court made no reference in his opinion to the testimony and apparently did not consider it in arriving at his decision. Regardless of whether or not the testimony was admissible, not having been considered, no error was committed in receiving it subject to objection.

The judgment is affirmed, with costs to proponents.

Butzel, C. J., and Wiest, Bushnell, Sharpe, Potter, North, and McAllister, JJ., concurred.