Proponent, National Savings and Trust Company, of Washington, D.C., presented an instrument in proper form to the probate court for the county of Cheboygan, as the last will and testament of Robert Livingston Smith, deceased. Contestant Florence D. Smith, his widow, filed objections to the allowance of the proposed will and upon her petition under the provisions of Act No. 288, chap. 1, § 36, Pub. Acts 1939, as amended by Acts Nos. 26 and 176, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 16289-1 [36], Stat. Ann. 1943 Rev. § 27.3178 [36]), the will contest was certified to the circuit court for the county of Cheboygan, where it was heard by the trial judge sitting without a jury. Contestant filed objections in the circuit court, to which was added by stipulation of counsel the claim that the decedent intended a certain instrument, dated May 28, 1936, hereinafter referred to as the Nassau will, to be his last will and testament, and did not intend the instrument, dated October 23, 1939, hereinafter called the Nebraska City will, to be his last will and testament. The circuit court admitted the Nebraska City will to probate and contestant has appealed from such judgment.
Although the objections filed by the contestant included mental incapacity and undue influence, these were abandoned and the case was tried on the *Page 520 
sole issue of whether the decedent at the time he executed the Nebraska City instrument intended it to operate as a testamentary disposition of his property.
Appellant's several claims on appeal may be summarized in the contention that the evidence produced at the trial did not preponderate in favor of proponent.
The decedent, Robert L. Smith, was the adopted son of Sarah L. Smith and Fred B. Smith, of Nebraska City, Nebraska. Fred B. Smith established a trust for Robert's benefit, of which proponent National Savings Trust Company was one of the trustees. Under this trust, Robert had the power of disposition of the residue by will, excepting an interest therein which remained in the name of his adopted son, Richard B. Smith.
Decedent and contestant, Florence D. Smith, were married in 1933, and had no children. Their legal residence was at Indian River, Cheboygan county, Michigan. They also maintained a home at Nassau, in the Bahamas, where the Nassau will was executed in 1936. The record shows that Robert L. Smith discussed the drafting of a new will with his foster-mother's attorney, John M. Dierks, a former county judge in Nebraska, some time in September of 1939 at his mother's home in Nebraska City. Judge Dierks represented the National Savings Trust Company in the administration of the Fred B. Smith trust. The instructions he received from Robert L. Smith were transmitted to the trust company, and Judge Dierks later received from it a draft of a proposed will. Robert L. Smith was afflicted with Hodgkin's disease and had, in the meantime, left Nebraska City to go to Ann Arbor, Michigan, for medical treatment. The trust company's draft was mailed by Judge Dierks to him at Ann Arbor on *Page 521 
October 19, 1939, and remained in his possession until its execution in Nebraska City on October 23d.
On October 21st, Ann Kuslak, a registered nurse of Ann Arbor, Michigan, was called to attend Robert L. Smith, and she left Ann Arbor with him that day by train for Nebraska City. They arrived at the home of his mother on Sunday, October 22d. The following morning Judge Dierks called on Robert. Nurse Kuslak was not in the room during the visit of Judge Dierks, but shortly thereafter, while they were alone, Robert asked her to write a letter to his wife, which he signed and the nurse witnessed. She was told by Robert that, in case of his death, "to be sure and give it to his wife, Mrs. Florence DeVore Smith." Miss Kuslak was relieved of her duties that day and left for her home in Ann Arbor that evening. This letter, received in evidence over the objection of proponent, reads as follows:
 "Nebraska City, Neb. October 23, 1939.
"To be given to my wife Florence DeVore Smith, in case of my death.
"Dear Florence:
"Mother had me sign a `will' this morning, but I had nothing to do with the way it was made, for it was not my intention or wish to make another `will' now. You know I am too sick to go into all that, but in case of my death Florence, I want the `will' I made in Nassau two or three years ago carried out, for that was my last will and is still my wish.
ROBERT L. SMITH
"Dictated per Mr. Smith to A. KUSLAK, R.N."
The Nebraska City will, executed the same day as the letter, was witnessed by Judge Dierks and two *Page 522 
other parties. This will does not mention the Nassau will and differs materially from it in its terms. It contains a bequest to a friend, Ben Janes, which was interlined by Judge Dierks at the request of Robert, and initialed by him before the will was executed.
Robert died at the home of his foster-mother in Nebraska City on October 31, 1939, eight days after the execution of the will. After Robert's death his widow located Nurse Kuslak through one of the doctors at the Ann Arbor hospital and called upon her with her attorney. Nurse Kuslak testified that at the time she did not know whether these parties were who they represented themselves to be, nor could she be positive that Robert was dead. She did not then deliver the letter to Florence or say anything about it. After their departure, Nurse Kuslak verified the factual situation by conversation with an Ann Arbor doctor. She then telephoned Mrs. Florence Smith at Indian River, Michigan, and told her she had something that would be very helpful to her. Subsequently the letter was delivered to the contestant.
To constitute a valid will the instrument must have been executed with testamentary intent, and a presumption of such intent usually arises upon a showing of execution of such a writing in form and substance as required by statute. See the probate code, Act No. 288, chap. 2, § 5, Pub. Acts 1939, as amended (Comp. Laws Supp. 1940, § 16289-2 [5], Stat. Ann. 1943 Rev. § 27.3178 [75]), and In re Cosgrove's Estate, 290 Mich. 258
(125 A.L.R. 410).
The controlling question in the instant appeal is whether extrinsic evidence is admissible for the purpose of showing lack of testamentary intent.
The letter in question was received in evidence over proponent's objection.
The English rule enunciated in Lister v. Smith, *Page 523 
3 Sw. Tr. 282, 10 Jur. N.S. (Eng.) 107, 33 L.J.P. 29, 9 L.T.N.S. 578, 12 W.R. 319, 164 Eng. Rep. 1282, is stated in ReKennedy's Estate, 159 Mich. 548 (28 L.R.A. [N.S.] 417, 134 Am. St. Rep. 743, 18 Ann. Cas. 892), as follows:
"`The momentous consequences of permitting parol evidence thus to outweigh the sanction of a solemn act are obvious. It has a tendency to place all wills at the mercy of a parol story that the testator did not mean what he said. On the other hand, if the fact is plainly and conclusively made out, that the paper which appears to be the record of a testamentary act, was in reality the offspring of a jest, or the result of a contrivance to effect some collateral object, and never seriously intended as a disposition of property, it is not reasonable that the court should turn it into an effective instrument. And such no doubt is the law. There must be the animus testandi,' citing Nichols
v. Nichols, 2 Phill. Ecc. 180 (161 Eng. Rep. 1113); Trevelyan
v. Trevelyan, 1 Phill. Ecc. 149 (161 Eng. Rep. 944); Swinburne, pt. 1, s. 3; Sheppard's Touchstone, p. 404; Pym v. Campbell, 6 El. Bl. 370 (119 Eng. Rep. 903).
"`But here I must remark that the court ought not, I think, to permit the fact to be taken as established, unless the evidence is very cogent and conclusive. It is a misfortune attending the determination of fact by a jury, that their verdict recognizes and expresses no degree of clearness in proof. They are sworn to find one way or the other, and they do so sometimes on proof amounting almost to demonstration, at others on a mere balance of testimony; sometimes upon written admissions and independent facts proved by disinterested parties, sometimes on conflicting oaths or a nice preponderance of credibility. And it is difficult to impress them with the enormous weight which attaches to the document itself as evidence of the animus with which *Page 524 
it was made. This weight it becomes the court to appreciate, and to guard with jealousy the sanction of a solemn act.
"In the present case, however, the court finds the evidence so cogent, that it is prepared to act on the finding of the jury that the codicil was executed as a sham and a pretense, never seriously intended as a paper of testamentary operation. But I am far from saying that the court will in all cases repudiate a testamentary paper simply because a jury can be induced to find that it was not intended to operate as such. The character and nature of the evidence must be considered, as well as the result at which a jury have arrived, and the court must be satisfied that it is sufficiently cogent to its end.'"
In the Kennedy Case this court rejected the English rule by saying:
"`The momentous consequences of permitting parol evidence thus to outweigh the sanction of a solemn act,' referred to by the court in the case of Lister v. Smith, supra, are still more momentous under the laws of this State, since, under the rule of evidence prevailing with us, no more cogent evidence is required to establish the fact of lack of testamentary intention in the making of an instrument than to establish any other fact which may be submitted to a jury for its determination, and the court has no greater authority to control the verdict or influence it in such a case than in any other. Recognizing fully the high character of the authorities sustaining the contestants' position, we are inclined, as this is an open question in this State, in view of the serious consequences of the contrary view, to hold, as was held by the supreme court of Alabama in the case of Barnewall v. Murrell, 108 Ala. 366 (18 So. 831), that:
"`It was, doubtless, one of the purposes of the statute, in requiring that testamentary dispositions *Page 525 
of personal property should be executed with the same formalities required in devises of land, to remove them from the doubt and uncertainty in this respect which attended them while the rule of the common law prevailed. There is no other mode of giving a valid expression to the animus testandi than that which the statute prescribes. Whatever forms the expression may assume, whatever solemnity may accompany it, the statute declares it ineffectual, unless the formalities it prescribes are observed. When these formalities are observed, if the writing be testamentary, if it imports a post-humous destination of property, the statute in itself and of itself attaches, and conclusively attaches, the animus testandi. The requisition of extrinsic or additional evidence of its existence is to add to the requirements of the statute; and to receive such evidence to repel the existence of the intent would be to receive evidence against the statute.'"
Contestant argues that the rule stated in the Kennedy Case
has been overruled by implication in Re Henry's Estate,263 Mich. 410, and in Re Cosgrove's Estate, supra, and therefore the letter signed by Robert should be considered in determining the issue of testamentary intent.
In the Henry Case the instrument presented for probate as a codicil was a letter written by the decedent to her lawyer, and the court there admitted extrinsic evidence for the purpose of determining testamentary intent.
In the Cosgrove Case the question was whether the paper presented for probate, an original penciled memorandum, was merely a memorandum from which the will was to be made or was the very instrument by which the deceased intended to dispose of his property after his death. In that case the court also held that extrinsic evidence was admissible to determine intent. *Page 526 
In the instant case, as in the Kennedy Case, testamentary intent is clearly deducible from the writing presented for probate which is on its face, in final form and substance, a will in compliance with the statutory requisites; while in the HenryCase and the Cosgrove Case, the instruments in question were not wills on their face in final form and substance, but were of doubtful character, and extrinsic evidence was, therefore, admissible to determine the decedent's intention.
The Cosgrove Case contains the following quotation fromMerrill v. Boal, 47 R.I. 274, 283 (132 A. 721,45 A.L.R. 830):
"Oral evidence as to the circumstances surrounding the execution of the instrument is admissible for the purpose of showing either an absence or presence of testamentary intent."
In the Merrill Case a will and a trust instrument were prepared at the same time. The trust instrument was executed with formality required by law for executing a will, and the question was whether this instrument, though not a will on its face, was executed animus testandi. Under these circumstances, which are unlike those in either the Kennedy or instant case, extrinsic evidence was properly admissible.
In support of the foregoing quoted statement of the law, the Rhode Island court cited Clarke v. Ransom, 50 Cal. 595;Milam v. Stanley, 33 Ky. Law, 783 (111 S.W. 296, 17 L.R.A. [N.S.] 1126); Outlaw v. Hurdle, 46 N.C. (1 Jones L.) 150;Whitney v. Hanington, 36 Col. 407 (85 P. 84); and Gage v.Gage, 12 N.H. 371. An examination of these authorities indicates that in none of them was this rule applied, except in instances where the instrument was of doubtful character and not on its face a will in final form and substance, in compliance with statutory requirements. *Page 527 
Neither the Henry Case nor the Cosgrove Case overruled theKennedy Case.
Even if the letter in question were admissible, there would still remain serious doubt whether the evidence against the will "is very cogent and conclusive." The law throws around the formal acts of a testator the safeguard that such acts are not to be lightly overturned after his death. At the same time, the law provides simple and effective methods for revoking a testamentary instrument. See the probate code, Act No. 288, chap. 2, § 9, Pub. Acts 1939, as amended (Comp. Laws Supp. 1940, § 16289-2 [9], Stat. Ann. 1943 Rev. § 27.3178 [79]).
We are considerably impressed by the fact that the decedent had the draft of the Nebraska City will in his possession for some time, and that when he executed the instrument he insisted upon insertion of the bequest to Janes, his friend and family chauffeur, which was interlined in his presence and initialed by him. However, decision is not planted upon any of these matters, but upon the legal proposition stated in the Kennedy Case, that:
"`When a sane testator, not subject to coercion or restraint, intentionally executes, with the formalities required by the statute, a writing which in form and substance is testamentary, the writing of itself imports, and conclusively imports, theanimus testandi, i.e., the mind to dispose, the firm and advised determination to make a testament, closing all inquiry as to the existence and manifestation of the intent.'" Barnewall
v. Murrell, 108 Ala. 366 (18 So. 831).
The judgment admitting the Nebraska City will to probate is affirmed, with costs to appellee.
STARR, WIEST, and SHARPE, JJ., concurred with BUSHNELL, J. *Page 528