# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Estate of KENNETH WALLER.

| | |
|---|---|
| CRYSTAL WALLER, | UNPUBLISHED |
| Appellant, | January 27, 2015 |
| and | |
| SHARON WALLER and KENNETH WALLER, JR., | |
| Petitioners, | |
| v | No. 315950 |
| | Oakland Probate Court |
| THOMAS BRENNAN FRASER, Personal Representative of the Estate of KENNETH WALLER, | LC No. 2009-320956-DE |
| Appellee. | |

Before: DONOFRIO, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Appellant Crystal Waller, proceeding *in propria persona*, challenges several decisions of the probate court related to the administration of her father's estate. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The decedent died intestate on December 30, 2008. At the time of his death, the decedent was separated from his wife, Sharon Waller, but no judgment of divorce was entered. The probate court appointed appellant, Crystal Waller, the decedent's daughter from a previous marriage to Nadine Waller, as personal representative of the estate. Early in the proceeding, issues arose regarding a premarital agreement executed by the decedent and Sharon Waller, and Sharon Waller's entitlement to the decedent's 401(k) retirement benefits through his employment with American Axle & Manufacturing, Inc. ("American Axle"). The trial court

-1-

appointed a special fiduciary, who determined that under the terms of the decedent's retirement plan and the federal Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*, Sharon Waller, as the decedent's surviving spouse, was entitled to the retirement plan proceeds. Accordingly, the probate court entered an order denying Crystal's petition to "turn over" the retirement funds to the estate. Crystal did not appeal this order.

The trial court held an evidentiary hearing on Sharon's petition to invalidate her premarital agreement with the decedent, and concluded that the agreement was valid and enforceable. However, Sharon appealed that order and this Court held that the premarital agreement was invalid because the decedent failed to make a fair and full disclosure of his assets as required by MCL 700.291 and MCL 700.2205.[1] This Court remanded for entry of an order declaring the premarital agreement invalid and unenforceable, and reinstating Sharon's rights as a surviving spouse to a share of the decedent's intestate estate under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq. Id.*, slip op at 8.

While Sharon's prior appeal was pending in this Court, Sharon petitioned the probate court to remove Crystal as personal representative of the estate on the ground that Crystal was incapable of discharging her duties, had disregarded a court order, and mismanaged the estate. The probate court granted the petition and appointed appellee Thomas Fraser as successor personal representative. The probate court denied Crystal's subsequent petitions for Fraser's removal and her reinstatement.

After this Court decided the prior appeal and held that the premarital agreement was unenforceable, Fraser petitioned the probate court for the estate's exclusive occupancy of the decedent's former residence on Nadol Street in Southfield. (Nadol residence). Crystal Waller, her brother Kenneth Waller, Jr., and their mother and the decedent's former spouse, Nadine Waller, were all residing in the home. The family disregarded the probate court's orders to vacate the property. Crystal unsuccessfully petitioned the court for a stay of its order. In October 2012, court officers effected an eviction. Crystal thereafter filed a lawsuit against Fraser, individually, in the 46th District Court, alleging wrongful eviction. The district court issued an order allowing the family two days in February 2013 to remove their possessions from the residence.

The probate court authorized Fraser's sale of the Nadol residence. Fraser petitioned the probate court for imposition of a surcharge against Crystal for losses incurred by the estate as a result of her wrongful occupation of the Nadol residence. The court ordered a surcharge against Crystal in the amount of $75,000, and rejected Crystal's argument that the matter was in the exclusive jurisdiction of the 46th District Court.

## II. PROBATE COURT'S JURISDICTION TO ORDER SURCHARGE

---

[1] *In re Estate of Kenneth Waller*, unpublished opinion per curiam, issued November 22, 2011 (Docket No. 300436).

Crystal argues that the probate court lacked jurisdiction to impose a surcharge because a civil action regarding occupation of the Nadol residence was pending in the 46th District Court. Crystal also raises arguments concerning the probate court's authority to appoint Fraser as successor personal representative while Sharon's prior appeal was pending in this Court, and the district court's jurisdiction over the eviction proceeding.

The probate court's factual findings are generally reviewed for clear error, but the probate court's conclusions of law respecting the interpretation of testamentary instruments, are reviewed de novo. *In re Estate of Raymond*, 483 Mich 48, 53; 764 NW2d 1 (2009). Issues involving the application and interpretation of a statute or court rule are also reviewed de novo as questions of law. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). The issue whether a court has subject-matter jurisdiction over a matter is also reviewed de novo. *Forest Hills Coop v City of Ann Arbor*, 305 Mich 572, 616; 854 NW2d 172 (2014), lv pending.

Crystal Waller argues that Fraser's appointment as successor personal representative was a legal nullity because the probate court had no authority to remove her as personal representative and appoint Fraser in her place while Sharon's prior appeal was pending in this Court. The substance of Crystal's argument is that the probate court was divested of jurisdiction between the time that the claim of appeal was filed and the time this Court issued its decision remanding the case to the probate court.

MCR 7.208(A) provides:

After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except

(1) by order of the Court of Appeals,

(2) by stipulation of the parties,

(3) after a decision on the merits in an action in which a preliminary injunction was granted, or

(4) as otherwise provided by law.

MCR 7.208(D) provides:

When an appeal is filed while property is being held for conservation or management under the order or judgment of the trial court, that court retains jurisdiction over the property pending the outcome of the appeal, except as the Court of Appeals otherwise orders.

MCR 7.208(A) only restricts the trial court's authority to modify the judgment or order under appeal while an appeal is pending. The restriction is inapplicable to this case as the order appealed from had no connection to the appointment of a successor personal representative. The orders removing Crystal as personal representative and appointing Fraser as successor personal

representative did not purport to set aside or amend the order at issue in the prior appeal, which involved the enforceability of the premarital agreement between Sharon and the decedent. Moreover, MCR 7.208(D) generally allows a trial court to continue to exercise its jurisdiction over property during the pendency of an appeal in this Court. Thus, the probate court was not divested of jurisdiction to remove Crystal as personal representative and to appoint Fraser as successor personal representative, because these actions related to the court's management of the estate property.

Crystal also argues that the decedent devised the Nadol property by will to his biological children. She contends that the premarital agreement, although declared unenforceable as between the decedent and Sharon, served as a valid and enforceable holographic will.

MCL 700.2502 provides:

> (1) Except as provided in subsection (2) and in sections 2503, 2506, and 2513, a will is valid only if it is all of the following:

> (a) In writing.

> (b) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction.

> (c) Signed by at least 2 individuals, each of whom signed within a reasonable time after he or she witnessed either the signing of the will as described in subdivision (b) or the testator's acknowledgment of that signature or acknowledgement of the will.

> (2) A will that does not comply with subsection (1) is valid as a holographic will, whether or not witnessed, if it is dated, and if the testator's signature and the document's material portions are in the testator's handwriting.

> (3) Intent that the document constitutes a testator's will can be established by extrinsic evidence, including, for a holographic will, portions of the document that are not in the testator's handwriting.

To constitute a will, the writing must have been designed to operate to dispose of the testator's property upon the testator's death. *In re Henry's Estate*, 263 Mich 410, 418-419; 248 NW 853 (1933). This Court may not go outside the will to supply an intention that cannot be found in it, but rather only to ascertain the intention that accompanied the execution of the will. *Leonard v Leonard*, 145 Mich 563, 566; 108 NW 985 (1906). In other words, "[t]he role of the probate court is to ascertain and give effect to the intent of the testator as derived from the language of the will." *In re McPeak Estate*, 210 Mich App 410, 412; 534 NW2d 140 (1995). "Absent an ambiguity, the court is to glean the testator's intent from the four corners of the testamentary instrument." *Id.* The testator must have intended for the document in question to "operate as a testamentary disposition of his property." *In re Cosgrove's Estate*, 290 Mich 258, 261; 287 NW 456 (1939). "A paper merely expressing an intention to instruct a solicitor to prepare a will making a particular disposition of property, will not be admitted to probate in the

absence of evidence of intention that such paper should have a testamentary operation." *Id.* at 262.

The cardinal rule of interpretation of testamentary instruments is that the intent of the grantor governs if it can be discerned, but if the grantor's intent is uncertain, courts must apply rules of construction. *In re Estate of Fitzpatrick*, 159 Mich App 120, 124; 406 NW2d 483 (1987). Principles relevant to determining whether an instrument contains language expressing testamentary intent are summarized at 79 AmJur2d, Wills, § 3, pp 316-317:

Testamentary character is requisite to the existence of a valid will. An instrument which accomplishes nothing of a testamentary character is not a will even though it may purport to be such an instrument and is executed with all the testamentary formalities.

An instrument is testamentary in character where, from the language used, it is apparent that the writer intended to make a disposition of his or her property or some part thereof, to be effective at his or her death. An instrument is testamentary in character when it neither confers nor evidences an intent to confer upon the donees any property, right, or benefit during the life of the maker.

The question whether or not a particular writing is testamentary depends on the dispositions which it makes and not on the use of conventional or technical terms or the name by which it is designated. Each instrument must be individually considered in determining whether it is testamentary in character.

It is apparent that the decedent did not "intend[] to make a disposition of his . . . property . . . to be effective at his . . . death." The decedent wrote in the premarital agreement:

I, Kenneth Waller drafted this contract *for both my protection and that of my biological children.* All money or properties, accounts, cars, trucks prior to my marriage to Sharon Nettles-Williams *belong to myself and biological heirs in the event of divorce, separation, or death.* [Emphasis added.]

This language reflects an intent to create enforceable contract rights during the decedent's lifetime. The first italicized phrase, "for both my protection and that of my biological children," reflects an intent to preserve the decedent's interest in his property and to protect his children's rights as heirs, which does not equate devising property to them upon the decedent's death. The decedent did not grant any property to his children at the time of his death by this language, but instead upheld their inchoate right to inherit over any right his wife would otherwise receive by virtue of the marriage. The second italicized phrase, "belong to myself and biological heirs in the event of divorce, separation, or death," reflects the decedent's intent to retain his own property interest in his premarital assets and to preserve his children's inheritance rights. Moreover, the decedent referred to the instrument as a "contract," and never used the word "will." The instrument does not state any specific information identifying his heirs or the property they will receive when he dies. It does not specify that his heirs will receive equal shares of his property, or any other apportionment of his property, upon his death. The language of the instrument, and the totality of circumstances surrounding its execution, indicate that the

purpose of the document was to preserve his biological children's rights as heirs over Sharon's rights as a surviving spouse or divorced spouse, without reference to whether his children would acquire his property through intestacy or through a trust or will upon his death. Because the instrument does not address whether, when, or how his heirs would acquire his property, it lacks the evidence of testamentary intent required to serve as a will. Accordingly, we assign no error.

Crystal next argues that her lawsuit for unlawful eviction against Fraser in the 46th District Court precluded Fraser from filing his "lawsuit" in the probate court. The probate court is not a court of general jurisdiction. *Noble v McNerney*, 165 Mich App 586, 593; 419 NW2d 424 (1988). "The district court . . . [has] jurisdiction over summary proceedings to recover possession of premises under this chapter." MCL 600.5704. "'Summary proceedings' means a civil action to recover possession of premises and to obtain certain ancillary relief as provided by this chapter and by court rules adopted in connection therewith." MCL 600.5701(a).

MCL 700.1302 governs a probate court's jurisdiction and provides, in pertinent part:

The court has exclusive legal and equitable jurisdiction of all of the following:

(a) *A matter that relates to the settlement of a deceased individual's estate,* whether testate or intestate, who was at the time of death domiciled in the county . . . including, but not limited to, all of the following proceedings:

(i) The internal affairs of the estate.

(ii) Estate administration, settlement, and distribution.

(iii) Declaration of rights that involve an estate, devisee, heir, or fiduciary.

(iv) Construction of a will. [Emphasis added.]

MCL 700.1303 provides, in pertinent part:

(1) In addition to the jurisdiction conferred by section 1302 and other laws, the court has concurrent legal and equitable jurisdiction to do all of the following in regard to an estate of a decedent, protected individual, ward, or trust:

(a) Determine a property right or interest.

* * *

(2) If the probate court has concurrent jurisdiction of an action or proceeding that is pending in another court, on the motion of a party to the action or proceeding and after a finding and order on the jurisdictional issue, the other court may order removal of the action or proceeding to the probate court. If the action or proceeding is removed to the probate court, the other court shall forward to the probate court the original of all papers in the action or proceeding. After that transfer, the other court shall not hear the action or proceeding, except by

appeal or review as provided by law or supreme court rule, and the action or proceedings shall be prosecuted in the probate court as a probate court proceeding.

The probate court had jurisdiction over all matters pertaining to the decedent's estate, including distribution of the Nadol residence and determination of the rights of the decedent's heirs. MCL 700.1302(a)(*ii*) and (*iii*); MCL 700.1303(1)(a). Fraser properly brought his petition for exclusive occupancy of the house in the probate court. The probate court therefore had jurisdiction to issue the June 20, 2012, and October 16, 2012, orders for exclusive occupancy, and the December 19, 2012, order authorizing the sale of the Nadol residence. The 46th District Court action could not divest the probate court of jurisdiction over the proceedings. Arguably, if the probate court had concurrent jurisdiction over the action under MCL 700.1303, rather than exclusive jurisdiction under MCL 700.1302(a), Fraser might have successfully moved for removal of the action to the probate court under MCL 700.1303(2). There are no apparent circumstances in which the probate court's jurisdiction could have been circumscribed, hence there was no error.

Crystal also argues that the surcharges for unpaid rent and property taxes were erroneous. She maintains that she and her family never entered into a rental agreement. The probate court found as its basis of the $46,000 surcharge for unpaid rent, the family's continued occupancy of the home after they had no legal right to possession. Crystal denies that the property tax arrearage was in the amount of $10,080, as claimed by Fraser. She states that the correct figure is $5,725.94. However, even if we were to presume a discrepancy in the property tax arrearage, any discrepancy was more than accounted for when Fraser reduced that the total amount owed to the estate by $38,477. Crystal does not explain why this reduction fails to rectify the alleged overcharge of the property tax expense, accordingly we cannot find error.

Finally, Crystal complains that Fraser failed to acknowledge whether the decedent and Sharon Waller were divorced. The record indicates that they were separated, but not divorced, at the time of the decedent's death. Crystal has never produced any evidence that a judgment of divorce was ever entered for the decedent and Sharon, hence she is not entitled to relief on this issue.

### III. PROBATE COURT'S AUTHORITY TO ORDER EVICTION

Crystal also argues that the probate court erred in allowing Fraser to commence a civil action against her pursuant to MCR 5.101, when Fraser was instead required to comply with MCL 600.5716 and MCL 600.5717, which govern summary proceedings to recover possession. MCR 5.101 governs probate court practice, and provides:

**(A) Form of Action**. There are two forms of action, a "proceeding" and a "civil action."

**(B) Commencement of Proceeding.** A proceeding is commenced by filing an application or a petition with the court.

**(C) Civil Actions, Commencement, Governing Rules.** The following actions must be titled civil actions and commenced by filing a complaint and are governed by the rules applicable to civil actions in the circuit court:

>    (1) Any action against another filed by a fiduciary or trustee.

>    (2) Any action filed by a claimant after notice that the claim has been disallowed.

Chapter 57 of the Revised Judicature Act, MCL 600.5701 – MCL 600.5759, governs summary proceedings to recover possession of land. The district court has jurisdiction over summary proceedings to recover possession of land. MCL 600.5704. MCL 600.5716 requires that "[a] demand for possession . . . shall be in writing, addressed to the person in possession and shall give the address or other brief description of the premises." MCL 600.5718 provides that the demand may be served "by delivering it personally to the person in possession, or by delivering it on the premises to a member of his family or household or an employee, of suitable age and discretion, with a request that it be delivered to the person in possession, or by sending it by first-class mail addressed to the person in possession." Crystal contends that her family's eviction from the Nadol residence was illegal because Fraser failed to comply with these requirements in Chapter 57.

As discussed previously, Fraser's petitions for exclusive occupancy and for the surcharge were proceedings that were necessitated to ensure the proper administration of the decedent's estate. As previously stated in this opinion, Fraser was not attempting to file a civil action against Crystal and he was not required to pursue summary proceedings in the district court. Further, the only "noncompliance" with the summary proceeding procedures cited by Crystal is the erroneous entry of "36th District Court" on the notice to quit. Crystal cannot claim that she did not receive proper notice of the proceeding to evict her from the Nadol residence. She received notice of the petitions for exclusive occupancy, and she filed replies and a pleading to "review and stay" the first order. There was no court rule or statutory violation or omission that tainted the proceeding or deprived Crystal of due process such that relief may be granted.

Crystal next argues that Fraser violated the anti-lockout statute, MCL 600.2918. The version of MCL 600.2918 in effect at all times relevant to the probate court proceedings provided, in pertinent part[2]:

>    (1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

>    (2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200.00, whichever is greater, for each occurrence and, where possession has been lost, to recover possession. Unlawful interference with a possessory interest shall include:

---

[2] The statute was amended by 2013 PA 127, with only minor stylistic changes to subsections (1) and (2).

(a)  The use of force or threat of force.

(b)  The removal, retention, or destruction of personal property of the possessor.

* * *

(3)  The provisions of subsection (2) shall not apply where the owner, lessor, licensor, or their agents can establish that he:

(a)  Acted pursuant to court order[.]

The purpose of MCL 600.2918 (referred to as "the antilockout law") is to abrogate a landowner's right to self-help and to require a landowner to "resort to judicial process to recover possession" from a tenant wrongfully in possession. "The statute was held to prohibit forceful self-help regardless of whether or not the tenant was in rightful possession of the premises." *Deroshia v Union Terminal Piers*, 151 Mich App 715, 718; 391 NW2d 458 (1986). Crystal contends that Fraser violated this statute when court officers and movers ejected her and her mother from the home before they were dressed, without allowing them to pack their possessions. The alleged forceful entry did not take place until October 2012, four months after Fraser initiated proceedings for exclusive occupancy, and two months after the probate court's deadline for the Waller family to vacate the home. Crystal also argues that Fraser's agents interfered with her efforts to remove her personal property in February 2013. These events occurred *after* Fraser acquired possession of the property for the estate and sold the property. Any misconduct occurring in February 2013 could not have been related to the family's right to possess the Nadol residence, because the probate court determined in 2012 that the family had no right of possession. Moreover, Crystal did not seek recourse against Fraser in the probate court for his allegedly illegal conduct arising from the family's forced removal in October 2012, or their attempt to remove personal property in February 2013. Consequently, there is no record pertaining to these events, and thus no basis for finding illegal conduct by Fraser. Crystal may not rely on unsupported allegations in her brief in support of her argument. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).

IV.  REMOVAL OF CRYSTAL WALLER AS PERSONAL REPRESENTATIVE

Crystal Waller argues that the probate court erred in removing her as personal representative. This Court reviews a probate court's decision to remove a personal representative for an abuse of discretion. *In re Kramek* Estate, 268 Mich App 565, 575-576; 710 NW2d 753 (2005). An abuse of discretion occurs where the trial court's decision falls within the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Considering Crystal's failure to comply with court orders, her evident miscomprehension of the proceedings and her duties, and her evident biases against Sharon and in favor of Nadine, the trial court's decision to remove Crystal as personal representative and to replace her with a neutral party was within the range of principled outcomes. Thus, the probate court did not abuse its discretion and no error occurred.

V.  DISTRIBUTION OF EMPLOYEE RETIREMENT BENEFIT

Crystal denies Sharon's entitlement to the proceeds of the decedent's 401(k)/personal savings plan fund. In *In re Lager Estate*, 286 Mich App 158, 164; 779 NW2d 310 (2009), this Court summarized the role a state court may play in enforcing the terms of an employee pension plan subject to ERISA:

> ERISA is a federal law intended to provide a uniform regulatory regime over employee benefit plans. *Aetna Health Inc v Davila*, 542 US 200, 208; 124 S Ct 2488; 159 L Ed 2d 312 (2004). ERISA is an exclusive remedy that preempts state law causes of action that relate to an employee benefit plan. *Id.* at 209. Consequently, federal courts generally have subject-matter jurisdiction over ERISA claims. *Yellow Freight Sys, Inc v Donnelly*, 494 US 820, 823 n 3; 110 S Ct 1566; 108 L Ed 2d 834 (1990), quoting 29 USC. 1132(e)(1). However, the Legislature provided concurrent jurisdiction to state and federal courts for claims brought by a beneficiary to recover benefits due to him or her under the terms of the plan, to enforce the beneficiary's rights under the terms of the plan, or to clarify the beneficiary's rights to future benefits under the terms of the plan. *Id.*; 29 USC. 1132(a)(1)(B).

Here, Sharon's entitlement to the proceeds of the decedent's retirement plan was established by ERISA. Crystal's arguments that Sharon and her attorney fraudulently represented Sharon as the lawful beneficiary of the retirement plan proceeds, and that other attorneys involved in the decedent's affairs wrongfully denied Crystal access to relevant information about the retirement plan are not supported by the record. There is no merit to Crystal's arguments regarding this issue and we assign no error to the probate court's distribution.

Affirmed. Appellee Fraser having prevailed in full is entitled to costs. MCR 7.219.

/s/ Pat M. Donofrio
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens